**In re Robert Paul FREGOSI, Ind. and t/a Colonial Cedar Roofs, Debtor.**

**Sherman B. LUBMAN, Trustee in Bankruptcy for the Estate of Robert Paul Fregosi, Ind. and t/a Colonial Cedar Roofs, Plaintiff,**

v.

**J. B. EURELL, CO., Defendant.**

Bankruptcy No. 80-00557.
Adv. No. 82-0100-R.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Oct. 1, 1982.

Leonard E. Starr, III, Farmer & Starr, Sandston, Va., for plaintiff.

Joseph E. Blackburn, Jr., White & Blackburn, P. C., Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a motion for summary judgment by Sherman B. Lubman, the trustee herein, against J. B. Eurell, Co., (Eurell) the defendant herein, based upon the trustee's complaint to avoid a preference pursuant to 11 U.S.C. § 547. Upon the submission of briefs and after hearing, the Court makes the following determination.

## STATEMENT OF THE FACTS

The parties agree there is no controversy as to the facts in the instant case. Eurell extended credit to Robert Paul Fregosi (Fregosi), the debtor herein, between January 11, 1978 and May 10, 1979. In July, 1979 Eurell took voluntary possession of two of the debtor's trucks to secure Fregosi's indebtedness to Eurell. Fregosi failed to pay this debt and Eurell obtained a judgment order in the Circuit Court of Henrico County, Virginia entered *nunc pro tunc* as of January 18, 1980 granting judgment against Fregosi in the amount of $13,567.27. The debt underlying the judgment was incurred prior to June 6, 1979. Pursuant to that judgment Eurell obtained a writ of fieri facias issued by the Clerk's Office of the Henrico County Circuit Court on January 31, 1980. Sometime between January 31, 1980 and February 28, 1980 the Sheriff of Henrico County levied on the two vehicles and on February 28, 1980 he auctioned these vehicles for the sum of $5,274.00. On March 5, 1980, after deducting the commission, the towing expenses, and the advertising expenses of the sale, the Sheriff paid Eurell $5,067.45.

On April 22, 1980 Fregosi filed a voluntary petition in bankruptcy with this Court. Creditors were given notice by this Court on May 15, 1980 that this was a no-asset case and that it was unnecessary for any creditor to file a claim with this Court in order to share in any distribution from the estate. One proof of claim in the amount of $61.26 has been filed by the Chesapeake & Potomac Telephone Company.

The parties agree that four of the five elements of a preference as set forth in 11 U.S.C. § 547(b) are present in the instant case. The sole question the Court faces is whether the debtor transferred property to Eurell on or within 90 days before the filing of the petition.

## CONCLUSIONS OF LAW

██ Eurell contends that it obtained a perfected security interest in the two trucks through taking voluntary possession of those trucks in July, 1979 as a pledge for the payment of money owed by Fregosi. In order to obtain a security interest in a motor vehicle in Virginia, a creditor must set forth his interest on the vehicle's certificate of title. *Va. Code Ann.* § 46.1–70. If the creditor fails to show a security interest on the certificate of title he cannot obtain a security interest in the vehicle. By requiring the showing of security interests in automobiles on the certificates of title, the statute protects other creditors who may rely on the public record. See *In re Hall,* 14 B.R. 186, 187 (Bkrtcy.S.D.Fla.1981). Eurell's voluntary possession of the trucks as a pledge for the antecedent debt owed by Fregosi was an insufficient means of perfecting its security interest. The trustee in bankruptcy may avoid any transfer of a debtor's property which occurred within ninety days of bankruptcy which contains the other elements of a preference listed in 11 U.S.C. § 547.

██ For the purposes of § 547 of the Bankruptcy Act a transfer is deemed made as of the date of the perfection of the security interest; not on the date on which it was created except where perfection occurs within ten days of creation. 11 U.S.C. § 547(e)(2)(B). In the instant case Eurell's failure to perfect its security interest prior to the 90 day period preceding bankruptcy is the transfer in issue. 11 U.S.C. § 547(e)(1)(B) defines perfection as the time when a creditor on a simple contract cannot acquire a judicial lien superior to the interest of the secured party. *Virginia Code* § 8.9–301(1)(b) notes that a lien creditor has priority over an unperfected security interest. Eurell failed to perfect a security interest in the automobiles outside of the 90 day period preceding bankruptcy. Prior to the date of the Sheriff's levy, any other creditor could have acquired judicial liens on the automobiles superior to Eurell's interest. See, *Va.Code Ann.* § 8.01–478. As a result that transfer was preferential and may be avoided by the trustee in bankruptcy. *In re Kelley,* 3 B.R. 651 (Bkrtcy.E. D.Tenn.1980).

Eurell relying on the definition of transfer contained in 11 U.S.C. § 101(40) alleges that the transfer occurred when Eurell first obtained possession of the vehicles.[1] This general definition of "transfer" is superseded for the purposes of § 547 by the definition of "transfer" contained in § 547(e)(2). See H.R.Rep.No. 95–595, 95th Cong. 1st Sess., 374–375 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

██ Eurell also contends that the trustee cannot avoid its security interest in the automobiles because the rights of the trustee in bankruptcy are subordinate to the rights of an unperfected security interest holder up to the date of the filing of the bankruptcy petition. In support of this contention, Eurell cites *Va.Code Ann.* § 8.9–301 which provides

"except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . . (b) a person who becomes a lien creditor before the security interest is perfected; . . . . (3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment."

---

1. 11 U.S.C. § 101(40) defines transfer as ". . . every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with property or with an interest in property, including the retention of title as a security interest."

Eurell misconstrues this section. This section provides that an unperfected security interest is subordinate to the rights of a lien creditor. Although the trustee in bankruptcy is construed to be a lien creditor only from the date of the filing of the petition, the term lien creditor is expansive and includes any creditor who has acquired a lien on the property involved by attachment, levy or the like. As long as any hypothetical lien creditor could have acquired a judicial lien superior to the interest of the secured party then, pursuant to 11 U.S.C. § 547(e)(1)(B), Eurell's interest in the automobiles remained unperfected. Because perfection occurred within ninety days of bankruptcy, the trustee in bankruptcy pursuant to § 547 may avoid that transfer as preferential.

An appropriate Order will issue.