**In the Matter of Roy R. GOTTSCHALK and Patricia Diane Gottschalk, Debtors.**

**Diane L. JENSEN, as Trustee, Plaintiff,**

v.

**GULF COAST FIRST NATIONAL BANK, a National Banking Corporation, Defendant.**

**Bankruptcy No. 84–465FM.
Adv. No. 84–256.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 4, 1985.

Diane L. Jensen, Fort Myers, Fla., for plaintiff.

Gordon R. Duncan, Fort Myers, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is a claim of a preferential transfer voidable under § 547 of the Bankruptcy Code. The claim is asserted by the Trustee of the estate

against Gulf Coast First National Bank (the Bank), the Defendant in the above captioned adversary proceeding. The immediate matter under consideration is a Motion for Summary Judgment filed by the Trustee who contends that there are no genuine issues of material facts and that the estate is entitled to a judgment as a matter of law. The facts germane to the resolution of the Motion under consideration are, indeed, without dispute and can be summarized as follows:

On May 13, 1983 Roy Gottschalk (the Debtor) executed a note in the amount of $56,000 payable to the Bank. This note was secured by a preferred ship mortgage encumbering the vessel "Amber Lynn" owned by the Debtor. Although the preferred ship mortgage was executed on July 13, 1983, the mortgage and the note were not mailed to the office of the Coast Guard located in Miami, Florida, until September 29 and were not received for reasons yet to be explained, until October 21, 1983. This note and mortgage were ultimately recorded by the Coast Guard on December 12, 1983.

On October 20, 1983, the Debtor executed a second note and a mortgage in the face amount of $70,000 payable to the Bank. This mortgage also encumbered the vessel "Amber Lynn" as well as a vessel "Angler Boat" also owned by the Debtor. It appears that this note was a replacement note for the first one. This note and the mortgage were mailed to the office of the Coast Guard on January 4, 1984. There is nothing in the record which indicates when it was actually received by the Coast Guard, however, it is without dispute that this second note and mortgage were ultimately recorded in the office of the Coast Guard in Miami on January 25, 1984.

The Debtor's Petition for Relief was filed on March 5, 1984. Thus it is without dispute that both mortgages were recorded within 90 days of the filing of the petition, even though the first note and mortgage were received by the Coast Guard more than 90 days prior to the date the Petition was filed.

The Bank concedes, as it must, that if the transfer occurred within 90 days preceding the commencement of the case, everything being equal, the transfer is a voidable preference and the two mortgages involved in this controversy can be declared to be unenforceable against the Trustee in charge of the estate of the Debtor.

To prevail under § 547, the initial inquiry must be addressed to the nature of the transaction; specifically, there must be a finding that the transaction under consideration was, in fact, a "transfer" within the meaning of § 547.

Section 101(48) of the Bankruptcy Code defines the term "transfer" as follows:

(48) transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, ...

Thus, it is clear that the execution of the notes and mortgages were "transfers" within the meaning of § 101(48) of the Bankruptcy Code. This leaves for consideration the question as to when these transfers occurred. Section 547(e)(1) deals with this problem and determines the time when a transfer is deemed to have taken place within the provisions of § 547 which in Subclause (B) of § 547(e)(1) provides as follows:

"a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

Based on the foregoing, in this particular instance, it is clear that the ultimate question which must be resolved is the point at which these two preferred ship mortgages became perfected within the meaning of § 547(e)(1)(B).

The perfection and the enforceability of preferred ship mortgages on U.S. vessels against third parties is now governed by the Ship Mortgage Act of 1920. 46 U.S.C. Section 911. The primary aim of this legislation was to encourage private investment

in the shipping industry by offering special advantages and protection to investors. See *Gilmore and Black, The Law of Admiralty, (2d ed. 1970).* As the result of very stiff opposition by some interest to the proposed legislation, the ultimate version of the statute includes some very stringent prerequisites before a preferred ship mortgage status is accorded to a lender or investor under the statute. These requirements are found in § 922(a) of Title 46, which Section provides, inter alia, that ship mortgages, to have a preferred status and to be valid, shall be recorded together with the time and the date when the mortgage is so enforced. 46 USC § 922(a)(2). In addition, § 921(b) of Title 46 provides that the Coast Guard shall record all bills of sale, conveyances, and mortgages "in order of their reception," and goes on to require a number of items to be indexed on recorded documents, including time and date of reception.

The obvious purpose of requiring The Coast Guard to record time and date of reception is to enable third parties to determine if the Coast Guard had, in fact, recorded the documents affecting a particular vessel in the right order, i.e., "in the order of their reception". For instance, if the Coast Guard recorded a mortgage of B before the mortgage of A, even though mortgage A was received first, the holder of mortgage A would have a statutory cause of action against the Coast Guard under 46 USC § 941(c). So, the purpose of the time-and-date-of-reception requirement of the Statute is to determine if the Coast Guard is doing its job properly but in no way changes the priority of a document established by "recordation."

Based on the foregoing, this Court is satisfied that the transfer occurred when the mortgages became perfected and in this particular instance, when the mortgages were recorded by the Coast Guard and not when they were received.

The Bank asserts that it is an innocent victim of a "bureaucratic mixup" by the Coast Guard and that it did everything it could have done under the circumstances. Therefore, so contends the Bank, for no other reason but fairness, its mortgage should not be subject to challenge. At first blush, this proposition appears to be attractive and appears to bring into play some equitable consideration. However, similar contentions were repeatedly rejected by Courts; *Exchange Bank of Polk County v. Christian (In Re Christian),* 8 B.R. 816 (Bankr.M.D.Fla.1981); *Weill v. Tennessee Central Credit Union (In re Kelley),* 3 B.R. 651 (Bankr.E.D.Tenn.1980); *Allison v. First National Bank & Trust Company (In re Damon),* 34 B.R. 626 (Bankr.Kan. 1983); *Lubman v. J.B. Eurell, Co., (In re Fregosi),* 23 B.R. 641 (Bankr.E.D.Va.1982); *Steinberg v. National Bank and Trust Company of Sycamore (In re Independence Land Title Corp.)* 9 B.R. 394 (Bankr. N.D.Ill.1981). It must also be noted that neither of the two mortgages in question were even mailed to the Coast Guard within 10 days of the transfer. So, even if the mortgages had been recorded immediately upon receipt, the transfer still would have occurred within the preference period.

The Bank has also intimated, although it did not articulate it very well, the proposition that the executions of the mortgages, were in fact, "contemporaneous exchanges" as contemplated by § 547(c) and therefore, the transactions under consideration are immunized, and not subject to attack as preferences. The vast majority of courts which dealt with this issue held that the contemporaneous-exchange exception does *not* apply to security interests. *Ray v. Security Mutual Finance Corporation (In re Arnett),* 731 F.2d 358 (6th Cir. 1984); *Valley Bank v. Vance (In re Vance),* 721 F.2d 259 (9th Cir.1983); *Bergquist v. Cessna Finance Corporation (In re A.E.F.S., Inc.),* 39 B.R. 66 (Bankr. Minn.1984); *Gower v. Ford Motor Credit Company (In re Davis),* 22 B.R. 644 (Bankr.Ga.1982); *Knauer v. Enlow (In re Enlow),* 20 B.R. 480 (Bankr.S.D.Ind.1982); *Brown v. Callaway Bank (In re Meritt),* 7 B.R. 876 (Bankr.W.D.Mo.1980); *In re Hall,* 14 B.R. 186 (S.D.Fla.1981).

A separate final judgment will be entered in accordance with the foregoing.