In re Claude Martin FREEMAN, Katherine Riggs Freeman, Debtors.

Claude Martin FREEMAN, Katherine Riggs Freeman, Plaintiffs,

v.

ELI LILLY FEDERAL CREDIT UNION and American Lenders Service, Inc., Defendants.

Bankruptcy No. 86–00472–R.
Adv. No. 86–00257–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 22, 1987.

James R. Sheeran, Richmond, Va., for plaintiffs.

Kay Wesley Hardy, Richmond, Va., for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon the filing by Claude Martin Freeman and Katherine Riggs Freeman ("Freemans" or "Debtors"), the debtors herein, of a complaint to compel turnover of property and for a determination that Eli Lilly Federal Credit Union ("Eli Lilly"), the defendant herein, does not hold a claim secured by said property. A pretrial conference was convened in this proceeding on July 30, 1986, and upon the representation of the parties that the facts were substantially uncontroverted, and upon ordering the submission of briefs on the issues of perfection and secured status, this matter was taken under advisement. Accordingly, based upon the facts as jointly stipulated by the parties, and upon the briefs filed, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On or about September 13, 1984, Claude M. Freeman purchased a 1984 Nissan 300ZX automobile from Neil Huffman Datsun, Inc., in Jefferson County, Kentucky. The debtor obtained financing for the purchase of that automobile to the extent of $19,756.93 from the Eli Lilly Federal Credit Union. On September 13, 1984 Mr. Freeman executed a promissory note to the order of Eli Lilly in the amount of $19,-756.93. The note provided for interest on the unpaid principal balance at a rate of 11.5% per annum and for payment of the obligation through 128 bi-weekly installments of $201.00 each and a final installment of $153.34. Payments were to commence September 20, 1984. On September 17, 1984, Claude M. Freeman and Katherine R. Freeman voluntarily granted a security interest in the Nissan automobile to secure repayment of the note of September 13, 1984, in the amount of $19,756.93.

The Kentucky Department of Motor Vehicles issued and delivered to the Freemans title to the automobile showing ownership by Claude M. Freeman and Katherine R. Freeman, but no notation of lien was stamped on the title. Eli Lilly never reported to the Kentucky Department of Motor Vehicles that it had a security interest in the vehicle.

The Freemans made payments to Eli Lilly from the date of purchase until September 5, 1985 at which time the payments ceased altogether. On February 22, 1986, five months after receiving the last payment from the Freemans, Eli Lilly directed American Lenders Service, Inc., in Richmond, Virginia, to take possession of the Nissan automobile for the purpose of selling it at auction and distributing the proceeds therefrom to Eli Lilly. Eli Lilly gave

notice to the Freemans that the vehicle would be sold at auction on March 17, 1986.

The Freemans filed this Chapter 13 proceeding on March 11, 1986, and as a result, the sale of the automobile was stayed. As of the date of the Chapter 13 filing the principal balance on the debt owed by the Freemans to Eli Lilly was $18,032.11. The value of the vehicle at the time this proceeding was filed was $12,500.00.

The Freemans' Chapter 13 plan was filed with this Court on March 11, 1986, together with the debtor's original petition. Eli Lilly has filed an objection to confirmation of the debtors' plan on the basis of its treatment as an unsecured rather than a secured creditor. The Court has deferred a ruling on confirmation pending the outcome of this adversary proceeding.

## CONCLUSIONS OF LAW

In *Lewis v. Manufacturers National Bank of Detroit*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), the Supreme Court determined that the law of the state where the transaction occurred governs the issue of perfection. The Nissan automobile which is the subject of dispute in this case was purchased and titled in Jefferson County, Kentucky; therefore, Kentucky law controls the issue of perfection.

Until recently, when the Kentucky legislature adopted the Automated Motor Vehicle Registration System Act, Kentucky was a "non-exclusive" title act state in which perfection of a security interest in an automobile could be accomplished by filing *and* by noting the lien on the certificate of title. This "dual perfection" system led to a great deal of confusion and to the eventual enactment of new legislation, similar to that already in force in the vast majority of states, to remedy the inconsistencies which existed with the former law. The law, as it currently stands, and as it stood in September of 1984 when the Freemans purchased their automobile, states:

186A. 190. Financing statement required on title document. Notice and release of financing statement (Effective until July 1, 1987)—1) Financing statements relating to vehicles required to be titled in Kentucky through the county clerk of the county in which the debtor resides or, if the debtor is a nonresident, in the office of the county clerk in which the vehicle is principally operated. *Notwithstanding the existence of any filed financing statement relating to any vehicle registered or titled in Kentucky, the sole means of determining priority of security interests in which vehicle shall be the notation of the security interest on such vehicle's registration or title.* (Emphasis added).

Kentucky Revised Statutes 186A. 190.

The final sentence of the statute makes clear that the only act which will allow a creditor to prevail in a priority contest is the notation of his security interest on the automobile's registration or title. Filing a financing statement with the Clerk's Office where the debtor resides will serve some limited purposes but such a filing—by itself—will not be deemed sufficient to permit the creditor to prevail over third parties or other lien creditors who may claim an interest in the vehicle.

The parties have stipulated that Eli Lilly's lien was never placed on the certificate of title to the Nissan automobile, so the Court accepts as fact that the security interest was not perfected by the method prescribed by the Kentucky law.

Eli Lilly alternatively contends that it perfected its security interest when, at the creditor's direction, American Lenders Service, Inc. repossessed the Nissan automobile. Eli Lilly relies on section 9–302(1)(a) and section 9–305 of the Uniform Commercial Code, which permit possession to suffice for perfection in certain instances. This Court has previously held in *In re Fregosi*, 23 B.R. 641 (Bankr.E.D.Va.1982) that possession is not always a sufficient means of perfecting a security interest. In that case, the creditor took voluntary possession of two of the debtor's trucks as a pledge for an antecedent indebtedness to the creditor. Subsequently, the debtor filed a voluntary petition in bankruptcy and the Court found that, since Virginia law required a lien creditor to "set forth his interest on the vehicle's certificate of title,"

the creditor's failure to do so rendered his interest unperfected. *Id.* at 643.[1]

■ It is this Court's opinion that Eli Lilly's perfection-by-repossession argument has no place where, as here, the controlling motor vehicle statute explicitly and unambiguously sets forth the procedure for perfection of security interests in automobiles. Eli Lilly, who is charged with notice of the Kentucky statute, had from the date the Freemans purchased the automobile the opportunity to perfect its interest by noting its lien on the certificate of title. It neglected to do so and, therefore, cannot now be heard to claim a priority status by virtue of repossession upon default. Simply stated, repossession of the automobile does not equate to perfection under the facts of this case.

Having concluded that Eli Lilly's security interest in the automobile was never properly perfected, the Court must next determine what effect that lack of perfection has upon the creditor's status in the Freemans' Chapter 13 proceeding. Eli Lilly maintains that even if it failed to properly perfect its interest, it is still a secured creditor under the debtors' plan by virtue of the security agreement entered into with the Freemans. Since this dispute over secured status involves only the Freemans and Eli Lilly—the parties to the original security agreement—Eli Lilly argues that the debtors should be held to the terms of the contract which they voluntarily negotiated and entered into. Issues of perfection, the creditor claims, are irrelevant un-less third parties claim an interest in the same collateral and a priority contest results. See *In re Lanctot,* 6 B.R. 576, 577 (Bankr.D.Utah 1980); *In re Evingham,* 27 B.R. 128, 129 (Bankr.W.D.N.Y.1983); *In re Chase,* 37 B.R. 345, 347 (Bankr.D.Vermont 1983).

The Freemans, on the other hand, contend that an inquiry into the issue of perfection is not only relevant to a determination of Eli Lilly's secured status, but is in fact dispositive of the issue. As the debtors interpret the law, lack of perfection prior to bankruptcy relegates Eli Lilly's claim to that of an unsecured creditor for purposes of treatment under their Chapter 13 plan. Therefore, Eli Lilly, like all other unsecured creditors, should receive only 57% of the value of its claim. *See Richlands National Bank v. Smith,* 34 B.R. 749 (D.C.W.D.Va.1983).

The complaint filed by the Freemans requests the Court for a declaration that Eli Lilly is an unsecured creditor in this Chapter 13 case. However, the action is, in essence, an attempt by the debtors to avoid an unperfected security interest under § 544(a) of the Code.[2] Accordingly, the Court will view it as such.

By virtue of section 103(a) of the Code, all provisions of Chapter 5 including the trustee's avoidance powers enumerated in that Chapter, are applicable and operable in cases filed under Chapters 7, 11, 12 and 13. *See Matter of Hall,* 26 B.R. 10, 11 (Bankr. M.D.Fla.1982); *In re Boyette,* 33 B.R. 10 (Bankr.N.D.Tex.1983). Clearly, then, if the

---

1. The Court is of the opinion that even should possession amount to perfection in this matter, Eli Lilly's repossession took place within 90 days prior to the filing of the Freemans' petition in bankruptcy and is, therefore, voidable as a preference under 11 U.S.C. § 547.

2. Section 544(a) reads as follows:

   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation in curred by the debtor that is voidable by—

   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

   (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

   (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer]. 11 U.S.C. § 544(a).

trustee in the Freemans' Chapter 13 case had sought to avoid Eli Lilly's unperfected security interest, he could have done so by virtue of the hypothetical lien creditor status afforded by § 544(a). The question is whether the Freemans—as the Chapter 13 *debtors*—should be permitted to utilize the same avoiding power. Although there is a substantial split of authority among the courts which have considered this issue, this Court is satisfied that in cases such as this one, where the trustee does not act, the debtor himself may exercise the trustee's "strong arm" powers under § 544(a).

The Court's conclusion is based in large part upon the different practical role which the trustee plays in a Chapter 13 case. Unlike the trustee under Chapter 7 or Chapter 11, the Chapter 13 trustee's functions are restricted to essentially administrative matters. *In re Ciavarella*, 28 B.R. 823, 827 (Bankr.S.D.N.Y.1983). His basic role is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans, *Matter of Einoder*, 55 B.R. 319, 323 (Bankr.N.D.Ill. 1985); therefore he does not possess the full panoply of weapons available to a trustee under the other chapters. *Ciavarella*, 28 B.R., at 827.

While the trustee is the representative of the estate and thus the only party with actual standing to pursue avoidance actions under §§ 544–553 of the Bankruptcy Code, he in fact rarely does so because of the disproportionate personal benefit gained in comparison to time and effort spent. In addition, the Chapter 13 trustee is often not in a position to litigate actions under the avoiding powers, and even if he should successfully pursue such an action, any recovery which he might make would become property of the estate and go to the debtor. *Einoder*, 55 B.R. at 322.

The reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case. *Ciavarella*, 28 B.R., at 827, *citing In re Cook*, 26 B.R. 187 (D.N.M.1982). It is the debtors who determine whether to remain in Chapter 13 and decide how much money is to be paid to the trustee for distribution to creditors. *Einoder*, 55 B.R., at 323. Therefore, it is only logical that they should be extended the powers possessed by the trustee which work toward enhancing their own bankruptcy estate.

Beyond these practical considerations, the legislative history of the Code—specifically, § 1303—also supports a holding that the trustee's avoidance powers may likewise be exercised by the Chapter 13 debtor. Section 1303 [3] delineates specific rights and powers, dealing primarily with use, sale and lease of property, which the Chapter 13 debtor may exercise *exclusive* of the trustee. The legislative history to that section states:

> Section 1303 of the House Amendment specifies rights and powers that the debtor has exclusive of the trustees. *The section does not imply that the debtor does not also possess other powers concurrently with the trustee.* For example, although section 1323 is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued. (emphasis added) 124 Cong. Rec.H. 11,106 (Sept. 28, 1978); S. 17,423 (Oct. 6, 1978).

The court in *Matter of Hall*, 26 B.R. at 11, construed these legislative comments in conjunction with the actual statutory language to find that "the Chapter 13 trustee whose practical role and function is much different than that of a Chapter 7 trustee, is *not exclusively empowered* to invoke the 'strong arm' clause." (emphasis added). By implication, then, the Chapter 13 debtors in *Hall* were held to have standing to exercise the trustee's § 544(a) powers to defeat the creditor's unperfected security interest in the debtor's equipment, inventory and after-acquired property.

---

**3.** Section 1303 reads as follows:

Subject to any limitations on a trustee under this chapter [11 USCS §§ 1301 et seq.], the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title [11 USCS §§ 363(b), (d), (e), (f), and (*l*)]. 11 U.S.C. § 1303.

Implementing similar reasoning, the court in *In re Boyette*, 33 B.R. at 11, rejected the creditor's contention that the avoidance powers under section 544 belonged exclusively to the trustee and were not available to the debtors. Thus, it was held that the Chapter 13 debtors before the court in that case were vested with the avoidance powers of a bona fide purchaser for value under section 544(a)(3).

 Especially in a case such as the matter *sub judice*, where the trustee has taken no action, it seems only reasonable to assume that the trustee's avoidance powers should be among those which Congress has referred to as concurrently possessed by the Chapter 13 debtor. Therefore, the Court finds that the Freemans have standing to maintain this action, and as willing Chapter 13 debtors they may employ the § 544(a) power to defeat Eli Lilly's unperfected security interest in their Nissan automobile.

This Court is aware that in similar circumstances other courts have not been quite so willing to extend use of the avoidance powers to Chapter 13 debtors. *See In re Carter*, 2 B.R. 321 (Bankr.D.Colo.1980); *In re Walls*, 17 B.R. 701 (Bankr.S.D.W.Va. 1982); *In re Carr*, 34 B.R. 653 (Bankr.D. Conn.1983). However, this case does not appear to be one appropriate for accepting the rationales thus advanced for restricting use of these powers to the trustee. Under the facts before it, the Court finds that it would be inequitable to refuse the Freemans the opportunity to increase the value of their estate by having Eli Lilly's interest determined to be unsecured. The debtors have demonstrated their willingness to act and their estate, therefore, should not suffer simply because the trustee has failed to take the proper action. To accept Eli Lilly's argument would be to allow a creditor who has in fact received a voidable transfer to reap a windfall at the expense of the unsecured creditors of the estate—all as a result of the trustee's failure to act. This Court will not sanction such a state of affairs.

In light of the foregoing, the Court finds that Eli Lilly is an unsecured creditor in this Chapter 13 proceeding, entitled to receive 57% of the value of its claim upon confirmation of the debtors' plan. The Freemans' complaint to compel turnover of the automobile should therefore be sustained.

An appropriate order will issue.