**In re Gregory Alan DRIVER, Debtor.**

**Bankruptcy No. IP91–1450–RWV–13.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

June 26, 1991.

Katherine A. Cornelius, Bleecker, Brodey & Andrews, Indianapolis, Ind., for ITT.

William L. Price, Indianapolis, Ind., for debtor.

## ORDER DENYING MOTION FOR AVOIDANCE OF LIEN OF ITT FINANCIAL SERVICES

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the Debtor's Motion for Avoidance of Lien ("the Motion"), filed February 19, 1991, by which the Debtor seeks to avoid a lien of ITT Financial Services ("ITT"). A hearing was held April 10, 1991. The Court now denies the Motion for the reasons below.

In the Motion, the Debtor asserted that ITT held a nonpossessory, nonpurchase-money security interest in certain property that would be exempt under Indiana law, and the security interest is avoidable under 11 U.S.C. section 522(f)(2)(A). In its Motion in Opposition to Lien Avoidance, filed March 4, 1991, ITT objected, contended that the lien does not impair any exemption to which the Debtor would be entitled. ITT has since dropped any objection it had to avoidance of its lien on certain of the Debtor's household goods and furnishings, and now objects only to the Debtor's attempt to avoid the lien on his 1972 Cadillac Sedan DeVille ("the Car").

The underlying facts are not in dispute. In June, 1990, the Debtor obtained a loan from ITT, giving ITT a nonpossessory non-purchase-money security interest in certain household goods and furnishings and the Car. The lien on the Car was not noted on the Car's certificate of title, and thus was not perfected under Indiana law. On February 13, 1991, the Debtor filed for relief under Chapter 13 of the Bankruptcy Code. The Debtor does not now contend that the lien is avoidable under 522(f)(2)(A), since it has been consistently held that motor vehicles are not among the enumerated items subject to lien avoidance under this provi-

sion. *See e.g. In re Colbert,* 57 B.R. 600, 601 (Bankr.D.D.C.1986). The Debtor instead contends that the lien is avoidable under 11 U.S.C. section 544(a)(1).

Under 11 U.S.C. section 544, a trustee is given "strong arm powers" to avoid certain otherwise valid transfers, including liens, accomplished by granting the trustee the rights and powers of certain hypothetical creditors, such as a judicial lien holder. *See* 11 U.S.C. section 544(a)(1). Since a judicial lien would take precedence over an unperfected security interest, such as ITT's, *see* Ind.Code 26–1–9–301, a trustee would have the power under section 544 to avoid ITT's lien on the Car.

Section 544 applies by its terms only to trustees, not to debtors. However, under section 522(g) and (h), if the trustee does not attempt to avoid a transfer that is avoidable under section 544 and the property subject to the transfer would be subject to exemption, the debtor is empowered to avoid the transfer, but only if the transfer was not voluntary. *See* 11 U.S.C. section 522(g)(1)(A). The Debtor has claimed the Car as exempt, however, since the Debtor voluntarily gave the security interest in the Car to ITT, the Debtor may not avoid the lien under section 522(g) and (h).

In Chapter 11 reorganizations, there is usually no trustee, and the debtor, as a "debtor-in-possession", assumes most of the duties and powers of a trustee, including the strong arm avoidance powers. *See* 11 U.S.C. section 1107. Since this section does not apply to Chapter 13 cases, *see* 11 U.S.C. section 103(f), it provides no basis for the Debtor to avoid ITT's lien.

In Chapter 13, in contrast to Chapter 11, there is always a trustee. *See* 11 U.S.C. section 1302. The debtor is given certain powers to use, sell or lease property, "exclusive of the trustee," *see* 11 U.S.C. section 1303, and a debtor engaged in business is given additional powers and duties, *see* 11 U.S.C. section 1304, but a Chapter 13 debtor is not explicitly bestowed with the trustee's strong arm transfer avoidance powers. The Debtor, however, argues that such powers should be implied.

There is case law in the Debtor's support. The seminal case appears to be *In re Hall,* 26 B.R. 10 (Bankr.M.D.Fla.1982), a brief opinion holding that a Chapter 13 trustee, whose practical role and function is different from a Chapter 7 trustee, is not exclusively empowered to invoke the strong arm powers, citing in support the legislative history of section 1303, which includes the statement:

> Section 1303 of the House Amendment specifies rights and powers that the debtor has exclusive of the trustees. *The section does not imply that the debtor does not also possess other powers concurrently with the trustee.* For example, although section 1323 [sic—323] is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued.

*Id.* at 11, *quoting* 124 Cong.Rec. H11106 (daily ed. Sept. 28, 1978); S17423 (daily ed. Oct. 6, 1978) (emphasis supplied by court). The Chapter 13 debtors were thus permitted to avoid an unperfected security interest in certain inventory and equipment.

The Debtor relies principally on *In re Freeman,* 72 B.R. 850 (Bankr.E.D.Va. 1987), in which the court allowed Chapter 13 debtors to avoid an unperfected purchase-money lien on a car. The court reasoned that since a Chapter 13 trustee does not have the same motivation as a Chapter 7 trustee to avoid liens, the debtors, as the "true representatives" of the estate, should enjoy the trustee's lien avoidance powers. *See id.* at 854–55. The court reasoned that the debtors had acted on behalf of the estate when the trustee had failed to take action, and that the creditor who had received an avoidable transfer should not "reap a windfall at the expense of the unsecured creditors of the estate...." *See id.* at 855.

The court in *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985), also found that Chapter 13 debtors could exercise a trustee's avoidance powers (in this case, preference avoidance), offering in support a detailed comparison between Chapter 7 and Chapter 13 trustees. Other cases have agreed, without detailed analysis. *See e.g. In re*

*Ottaviano*, 68 B.R. 238 (Bankr.D.Conn. 1986) (power to avoid fraudulent transfer); *In re Boyette*, 33 B.R. 10 (Bankr.N.D.Tex. 1983) (lien avoidance power). The court in *In re Chapman*, 51 B.R. 663 (Bankr. D.D.C.1985), while first deciding that a trustee's strong arm powers are available to a Chapter 13 debtor, *id.* at 665, nevertheless declined to allow the debtor to avoid an unperfected security interest in his home, finding that avoidance would provide *de minimis*, if any, benefit to any unsecured creditors, *id.* at 666.

Other courts that have addressed the issue have concluded that a Chapter 13 debtor does not share the trustee's avoidance powers. The earliest case, *In re Carter*, 2 B.R. 321 (Bankr.D.Col.1980), observed that although the legislative history suggests some powers might be concurrently held by the debtor and the trustee, such as to sue and be sued,

> the recognition of that power does no violence to the role of the Chapter 13 trustee. Were lien avoidance power concurrently held, the trustee would effectively lose control over lien avoidance litigation. That result should be avoided, particularly if it is reachable only by implication. When Congress intended debtors to exercise the powers of a trustee in Chapter 11, it explicitly so stated in section 1107(a). Presumably, a section analogous to section 1107(a) would be present in Chapter 13 if that were the congressional intent.

*Id.* at 322. *Accord In re Driscoll*, 57 B.R. 322, 325 (Bankr.W.D.Wis.1986); *In re Colandrea*, 17 B.R. 568, 583 (Bankr.D.Md. 1982).

The court in *In re Jardine*, 120 B.R. 559, 562 (Bankr.D.Idaho 1990), concluded that practicality dictates that the trustee control the right to assault transfers of property, since the trustee's broader perspective as to the estate acts as a buffer against potential abuse. If the trustee refuses to act, in appropriate circumstances, the court may authorize another interested party to pursue an action on behalf of the estate. *See id.* In what appears to be the most recent case on the issue, *In re Tillery*, 124 B.R. 127, 129 (Bankr.M.D.Fla.1991), the court noted that it was intended that a Chapter 13 plan be funded through future income, not by pursuing voidable transactions, concluded that there was no apparent justification to permit a Chapter 13 debtor to avoid a transaction to which the debtor was a participating party when the avoidance would play no meaningful role in the debtor's ability to propose and consummate a plan, and therefore held that the debtor may not utilize the avoidance powers of section 544.

The debate on this issue has focused in large part on the differences between the functions of a Chapter 7 and a Chapter 13 trustee. In Chapter 7, the debtor's price for a discharge is surrender of all his or her nonexempt property. An estate consisting of all the debtor's nonexempt, unencumbered property (with minor exceptions) is created, *see* 11 U.S.C. section 541(a), and is administered by the trustee, the representative of the estate, *see* 11 U.S.C. section 323(a), primarily for the benefit of unsecured creditors, *see* 11 U.S.C. section 726(a). The trustee may enhance the estate by avoiding certain prepetition transfers, such as unperfected security interests, preferences and fraudulent conveyances. *See* 11 U.S.C. sections 544, 547 and 548. Since the trustee is compensated on the basis of the amount of money the trustee distributes, *see* 11 U.S.C. section 326(a), the trustee has an incentive to avoid liens and other transfers if it will bring property into the estate for distribution to creditors. Since the trustee has no incentive to avoid transfers if the debtor will claim the property thus freed as exempt, *see* 11 U.S.C. section 522(g), the debtor is given limited power to avoid such transfers, one limitation being that the transfer must have been involuntary, *see* 11 U.S.C. section 522(h) and (g)(1)(A). Thus, the trustee enjoys the full panoply of avoidance powers for the benefit of the estate and unsecured creditors, but the debtor's access to such powers for his or her own benefit is limited to recovering exempt property from nonconsensual liens and transfers.

In Chapter 13, by contrast, the debtor may keep all his or her property, not just

exempt property, and proposes a payment plan funded through future income, with the debtor making payments to the Chapter 13 trustee and the trustee making distributions to creditors according to the plan. *See* 11 U.S.C. sections 1306(b), 1321, and 1322(a)(1). Therefore, unlike a Chapter 7 trustee, a Chapter 13 trustee does not have the duty of collecting estate property and reducing it to money. *Compare* 11 U.S.C. section 1304(b)(1) *with* 11 U.S.C. section 704(1). Creditors are protected by the requirements that under the plan, unsecured creditors must fare at least as well as they would if the case were one under Chapter 7, *see* 11 U.S.C. section 1325(a)(4) (the "best interests of creditors" test), and secured creditors must retain their liens and receive the present value of their collateral through the plan, *see* 11 U.S.C. sections 506(a) and 1325(a)(5)(B). A Chapter 13 trustee's compensation is based on a percentage of the payments received from the debtor. *See* 28 U.S.C. section 586(e) and 11 U.S.C. section 326(b). Thus, a Chapter 13 trustee does not have the same incentive to avoid transfers as a Chapter 7 trustee does.

Chapter 13, however, also differs from Chapter 7 in the effect of lien avoidance on a debtor. In Chapter 7, if a lien is not avoided, a debtor wishing to retain tangible personal property serving as collateral must either reaffirm the entire debt (if the creditor is agreeable) or redeem the property by cash payment of its value. *See* 11 U.S.C. sections 524(c) and 722; *In re Edwards*, 901 F.2d 1383 (7th Cir.1990). By contrast, Chapter 13 allows a debtor to retain encumbered property while, in essence, redeeming it over the life of the plan. *See* 11 U.S.C. section 1325(a)(5)(B)(ii). In most Chapter 13 cases, whether a lien is avoided will not affect the debtor, but only the relative treatment of creditors. The dividend to unsecured creditors might be less if the lien is not avoided and the secured claim must be paid in full, but the debtor will usually have to pay all his or her disposable income into the plan for three years, regardless of whether the lien is avoided. *See* 11 U.S.C. section 1325(b)(1)(B).

In this case, the Debtor's Chapter 13 statement shows unsecured debts of $8275.00 and only one secured debt, $3000.00 owed to ITT. The value of the Car is set at $1000.00, which has not been challenged. Since all the Debtor's property is claimed as exempt, unsecured creditors could expect no dividend if this were a Chapter 7 case. His proposed plan calls for monthly payments of $100.00 over three years, for a total of $3600.00. After payment of approximately $1000.00 in attorney fees and $360.00 to the trustee, about $2240.00 would remain for creditors, for a dividend of about 20 percent if all debts are treated as unsecured. If ITT's lien is not avoided, the Debtor will have to pay the present value of the Car to ITT over the life of the plan, *see* 11 U.S.C. section 1325(a)(5)(B)(ii), and approximating this to be $1300.00 (the additional $300.00 representing three year's "present value" interest on the $1000.00 secured claim, for the purpose of rough approximation), the remaining $940.00 would provide a nine percent dividend on unsecured claims, including the unsecured portion of ITT's claim, still satisfying the "best interests of creditors" test. *See* 11 U.S.C. section 1325(a)(4). Thus, whether ITT's lien is avoided will apparently have no effect on the Debtor's obligations or benefits. His proposal to pay $100.00 monthly for three years will produce a confirmable plan and allow him to retain the Car regardless of how ITT's claim is treated. It is therefore unclear what personal advantage the Debtor seeks through lien avoidance if the Debtor intends to complete his proposed plan.

A Chapter 13 debtor might benefit from lien avoidance if he or she does not complete the plan and instead converts to Chapter 7. *See* 11 U.S.C. section 1307(a). In this case, for instance, if the Debtor were allowed to avoid ITT's lien and later converts to Chapter 7, he would manage to circumvent the clear congressional intent that a Chapter 7 debtor benefit from a trustee's unused lien avoidance power only if the lien was not consensual. *See* 11 U.S.C. section 522(g) and (h). Lien avoidance would also benefit a Chapter 13 debt-

or if the presence of the lien, and thus the secured claim that must be paid in full, (and arguably, in some cases, the amount unsecured creditors would receive if the case were one under Chapter 7, *see Einoder*, 55 B.R. at 323), forces the debtor into a plan longer than three years, *see* 11 U.S.C. section 1322(c), or makes proposing a feasible plan impossible. However, it would then be in the Chapter 13 trustee's interest (and is arguably among the trustee's duties, *see* 11 U.S.C. section 1302(b)(4)) to use the transfer avoidance powers to enable the debtor to propose and perform a feasible plan. The Court therefore concludes that there is no justification or necessity for allowing a Chapter 13 debtor to use a trustee's transfer avoidance powers for his or her personal benefit, except to the extent allowed by 11 U.S.C. section 522(g) and (h).

The question then remains whether a Chapter 13 debtor has standing to use the trustee's transfer avoidance powers for the benefit of unsecured creditors. In Chapter 7, maximizing the estate and the relative treatment of creditors is indisputably the trustee's concern, not the debtor's, and thus, the trustee alone may exercise the full range of avoidance powers. In Chapter 13, the trustee's obligations toward the estate and unsecured creditors is not as clear. However, there is nothing that explicitly imposes on a Chapter 13 debtor any duty to look out for the interests of unsecured creditors beyond the requirements that the plan the debtor proposes provide such creditors with at least as much as they would have received in Chapter 7, that it not unfairly discriminate against any class of unsecured claims, and that it give the same treatment to all claims of the same class. *See* 11 U.S.C. sections 1325(a)(4), 1322(b)(1) and 1322(a)(3); *In re Hall*, 118 B.R. 671, 676 (Bankr.S.D.Ind. 1990). Any further obligation to unsecured creditors would have to be implied, and would probably be most unwelcome. If a Chapter 13 debtor lacks any obligation to maximize recovery for unsecured creditors, there is no basis for allowing the debtor to exercise a trustee's full avoidance powers. Because Congress knew how to explicitly

give a debtor the duties and powers of a trustee, as it did in Chapter 11, *see* 11 U.S.C. section 1107, the Court declines to infer that a Chapter 13 debtor was intended to have similar duties and powers. The Court therefore holds that a Chapter 13 debtor lacks standing to exercise the trustee's lien avoidance powers for the benefit of unsecured creditors.

Because the Debtor lacks standing to assert the trustee's lien avoidance powers either for his own benefit or for the benefit of unsecured creditors, the Court must deny his motion to avoid ITT's lien on the Car.

The Court therefore DENIES the Debtor's Motion for Avoidance of Lien.

SO ORDERED.