In re Kamal M. BABIKER & Deloris B. Herasingh, Debtors.

Kamal M. BABIKER & Deloris B. Herasingh, Plaintiffs,

v.

CITIZENS CONTRACTING CO., INC., Defendant.

Bankruptcy No. 93–13349–AB.
Adv. No. 94–1356.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

April 11, 1995.

Januario G. Azarcon, Huddock, Sawyer & Azarcon, P.C., Vienna, VA, for plaintiffs.

Ronald K. Ingoe, Sterling, VA, for defendant.

Gerald M. O'Donnell, Chapter 13 Trustee, Alexandria, VA.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The debtors, Kamal M. Babiker and Deloris B. Herasingh, have filed a complaint against the defendant, Citizens Contracting Company, Inc. ("Citizens"), in order to avoid an asserted preferential judgment lien held by Citizens. In lieu of trial, the parties have submitted this matter on briefs and joint stipulation of facts. As its sole defense, Citizens argues that the debtors were solvent at the time the judgment lien attached, and therefore the debtors cannot establish a prima facie case under 11 U.S.C. § 547(b). For the reasons that follow, we conclude that the debtors have established a prima facie case under § 547(b), and that the sole defense raised by Citizens is unavailing. We will therefore enter an order avoiding the judgment lien.

### I.

On June 23, 1993, Citizens obtained a judgment against the debtors in the General District Court of Fairfax County, Virginia. The judgment was docketed on July 21, 1993, and thus attached to the debtors' residence located in Fairfax County. See Va.Code § 8.01–458 (Michie 1992). A few weeks later, on August 9, 1993, the debtors filed for bankruptcy relief under Chapter 13. The debtors also filed, and subsequently amended, their schedules listing their total assets and the claims asserted against their estate. The parties here have stipulated that the values and amounts listed in the schedules are "approximately equal [to] or the same" as the values and amounts in existence when the judgment was docketed. Stipulation ¶ 4.

The schedules, however, are hardly the model of clarity or precision. The only real property reported in the schedules is the residence encumbered by Citizens' lien. One portion of the schedules provides that the house is worth $240,000 while other portions reveal that the same house is worth only $230,000, or $10,000 less. Citizens believes

the $10,000 disparity can be explained by the full $10,000 homestead exemption that the debtors have claimed with respect to their residence. In other words, some portions of the schedules take the claimed exemption into account, while other portions do not. The debtors have not disputed the interpretation provided by Citizens; thus we need not pursue the issue further. We therefore reach the conclusion that the full value of the residence is $240,000. In addition to the Citizens lien, a deed of trust encumbers the residence, securing a $216,000 claim held by Home Savings of America, F.A. Deducting (1) the $216,000 lien of Home Savings and (2) the $7,295 judgment held by Citizens from (3) the full $240,000 value of the residence, the amount of equity remaining in this property is $16,705, which means that, for present purposes, Citizens' claim is fully secured.

As for personal property, the debtors have listed several items in their schedules, and have indicated that the aggregate value of these items is $12,405. Using the values the debtors have reported for each individual entry, we calculate that the total amount of personal property is $14,405, or $2,000 more than the debtors have erroneously calculated. Of the $14,405 in personal property, the debtors have claimed $12,280 as exempt, which means that only $2,125 ($14,405 less $12,280) would be available to creditors in a liquidation. When we combine the amount of real property that would be available ($230,000) with the total amount of personal property that would be available in a liquidation, the total amount of assets that would be subject to creditor reach is $232,125, which is far less than the total amount of secured and unsecured claims ($262,535) asserted against the estate.[1] In short, the total amount of claims exceeds the amount of available assets by $30,410. With these findings, we turn now to the issues presented here.

### II.

■ Generally, a transfer of property may be avoided as a preference if it was made on

---

1. We arrive at the total of $262,535 by adding the total number of liabilities in the debtor's schedules, $255,240, with Citizens' claim of $7,295. Originally, the debtors' schedules did not list the claim of Citizens. The debtors subsequently filed an amendment to their schedules listing Citizens' claim.

account of an antecedent debt within 90 days of the filing of the petition while the debtor was insolvent. 11 U.S.C. § 547(b).[2] For purposes of § 547(b), the docketing of a judgment lien constitutes a transfer to or for the benefit of a creditor, which is subject to avoidance. *See id.* §§ 101(54), 547(e)(1)(A); Va.Code § 8.01–458; *see also* 4 *Collier on Bankruptcy* ¶ 547.03[1][A], at 547–19 (Lawrence P. King ed., 15th ed. 1994). In this instance, both the rendering and docketing of the judgment occurred within 90 days of the petition date.

■■■ Additionally, as part of their prima facie case, the debtors must establish that the transfer gave Citizens more than it would otherwise receive in a hypothetical Chapter 7 case. *See* 11 U.S.C. § 547(b)(5). Here the debtors argue that the docketing of the judgment lien elevated Citizens to the status of a fully secured creditor, which requires the debtors, in turn, to pay more than the amount that Citizens would otherwise receive as an unsecured creditor. The debtors point out that unsecured creditors are receiving 63% of their claims under the modified Chapter 13 plan that is currently on file.[3] A Chapter 13 plan cannot be confirmed unless it proposes to pay each unsecured claim more than it would receive if the estate were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(4). Accordingly, because a plan has been confirmed in this instance, the debtors imply that Citizens would receive even less as an unsecured creditor in a Chapter 7 case. We find this argument persuasive, but

we need not rely on it alone. Having reviewed the debtors' schedules carefully, we conclude that the judgment lien does provide Citizens with more than it would receive as an unsecured creditor in a hypothetical Chapter 7 case.

■■■ As noted above, a transfer may be avoided if the debtor was insolvent at the time the transfer occurred. *Id.* § 547(b)(3). A debtor is presumed insolvent during the 90 days preceding the petition date, but a defendant-creditor may overcome this presumption by introducing proof of the debtor's solvency. *See id.* § 547(f); *Akers v. Koubourlis (In re Koubourlis)*, 869 F.2d 1319, 1322 (9th Cir.1989). In this instance, the judgment lien attached during the 90–day preference period, and Citizens' defense focuses on whether the debtors were truly solvent at this time. In pertinent part, § 101(32) of the Bankruptcy Code defines "insolvent" as

> [a] financial condition such that the sum of [the debtor's] debts is greater than all of [the debtor's] property, at a fair valuation, *exclusive of* (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud [the debtor's] creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A) (emphasis added). When measuring insolvency under this definition, we include on the asset side of the calculation the property interest allegedly transferred as a preference. *See* 2 *Collier on*

**2.** The parties have not raised the issue of whether Chapter 13 debtors may pursue an action under § 547 so we do not address it. We do note, however, that one decision rendered in this district holds that Chapter 13 debtors may invoke the avoidance powers ordinarily available to trustees or Chapter 11 debtors-in-possession. *See Freeman v. Eli Lilly Fed. Credit Union (In re Freeman)*, 72 B.R. 850 (Bankr.E.D.Va.1987).

**3.** Further comment is necessary with respect to the modified plans the debtors have filed. On February 15, 1994, this Court confirmed a modified plan that did not provide for Citizens' claim. The debtors subsequently amended their schedules listing Citizens as a secured creditor, and then filed a second modified plan treating Citizens' claim as secured. No objection was filed. Thereafter, the debtors filed a third modified plan dated July 19, 1994, which reclassified Citi-

zens as an unsecured creditor, and no objection to this plan was filed. Although current bankruptcy law contemplates that a modified plan may go into full force and effect absent any objections, *see id.* § 1329(b)(2); Fed.R.Bankr.P. 3015(g), we do not believe the third modified plan, which reclassifies Citizens as an unsecured creditor, renders the current controversy moot. A proposed modified plan must satisfy the requirements for confirmation set forth under 11 U.S.C. § 1325(a), one of those requirements being that a secured creditor must retain its lien under the plan. *See id.* §§ 1325(a)(5)(B), 1329(b)(1). The third modified plan is invalid inasmuch as it currently prevents Citizens, a fully secured creditor, from retaining its lien. Accordingly, the proceeding at hand presents a justiciable controversy insofar as the debtors seek to avoid Citizens' lien.

*Bankruptcy* ¶ 101.32, at 101–98 (Lawrence P. King ed., 15th ed. 1994).

Even when we include on the asset side the amount encumbered by the judgment lien, Citizens is still unable to establish that the debtors were solvent in July 1993, when the judgment was docketed. As noted above, the schedules establish that claims exceed available assets by $30,410. Citizens and the debtors have stipulated that the values and amounts reflected in the schedules were, in fact, extant when the judgment lien attached to the debtors' residence.

Citizens asserts, however, that when measuring insolvency, we should include the amount of property claimed exempt by the debtors. Specifically, Citizens urges us to include the full $240,000 value of the house on the asset side, and not the $230,000 figure that would remain after we subtracted the $10,000 exemption. Likewise, as to the personal property, Citizens asks us to consider the total value of $14,405, rather than the $2,125 that would remain after we excluded the amount of personal property claimed exempt. If we add the total value of the residence ($240,000) to the total value of personal property ($14,405), the debtors would have a total of $254,405 in assets, which is an amount much closer to the total amount of claims listed on the schedules.

The problem with Citizens' method of calculating insolvency is that it ignores the express provisions of the Bankruptcy Code. The plain language of § 101 requires that we compare the sum of the debts with the amount of property *"exclusive of . . .* property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32)(A)(ii) (emphasis added). Section 522, in turn, permits states to opt out of the federal exemption scheme in favor of their own exemption laws. *See id.* § 522(b)(1). Virginia is among the states opting out of the federal scheme, *see* Va.Code § 34–3.1 (Michie 1990), and in this instance, the debtors have claimed their exemptions pursuant to Virginia law. Consequently, Citizens' attempt to include exempt property on the asset side is unavailing.

Citizens also urges us to include on the asset side certain charitable and retirement deductions from the salary of one of the debtors. Furthermore, relying on a 1952 decision of the Virginia Supreme Court, which interpreted the former Bankruptcy Act, Citizens asserts that we should exclude its claim of $7,295 from the liabilities column in determining whether the debtors were solvent. Even if we agreed with Citizens in both respects, the amount of assets, *excluding exempt property*, still would not surpass the total amount of claims. Accordingly, we find that the debtors were insolvent when the judgment lien attached.

### III.

For the foregoing reasons, we conclude that the debtors have established a prima facie case for avoidance under 11 U.S.C. § 547(b). Citizens' sole defense is that the debtors were solvent when the judgment lien attached, but we discount this argument for the reasons set forth above. Citizens has not alleged any of the affirmative defenses enumerated under § 547(c). Accordingly, an order will be entered, avoiding the judgment lien as a preference.