In the Matter of Bruce **MOORE,** Donna
**Moore, dba Moore Trucking, aka
Moore Truck Repair, Debtors.**

**Bankruptcy No. 86–1867–C.**

United States Bankruptcy Court,
S.D. Iowa.

Jan. 11, 1988.

Richard B. Campbell, Des Moines, Iowa, for debtors.

Robert N. Helmick, Des Moines, Iowa, for ITT.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for I.R.S.

Mark S. Lorence, Des Moines, Iowa, for Volvo/White Truck Credit Corp.

## ORDER

LEE M. JACKWIG, Bankruptcy Judge.

On June 4, 1987 confirmation of the debtors' plan of reorganization came on for hearing before this court in Des Moines, Iowa. An objection to the plan was filed on behalf of ITT Industrial Credit Corporation (ITT) on March 20, 1987. An objection to the plan was also filed on behalf of the Internal Revenue Service (IRS) on April 13, 1987. Richard B. Campbell appeared on behalf of the debtors. Robert N. Helmick appeared on behalf of ITT. Linda R. Reade, Assistant U.S. Attorney, appeared on behalf of the IRS. Mark S. Lorence appeared on behalf of Volvo/White Truck Credit Corp. and indicated acceptance of the plan. At the close of the hearing the parties were ordered to submit briefs on the issues raised within 30 days.

The debtors' plan treats ITT as a secured creditor in Class II. The plan proposes to pay ITT's debt of $224,000.00 with 15 percent interest over 53 months and provides that ITT will retain its security interest in used vehicles. ITT objects to this treat-

ment and asserts that it will not be receiving payments under the plan which are the indubitable equivalent of its claims.

The debtors' plan treats the IRS as a priority creditor in Class I. The plan proposes to pay the IRS $72,423.83 with 6 percent interest over 45 months. The IRS objects to this treatment and asserts that the full amount of its claim is $74,898.83. The IRS further disputes the interest rate proposed and contends that the appropriate rate is 9 percent, the interest rate prescribed by Internal Revenue Code section 6621. Moreover, the IRS asserts that it is a secured creditor in the amount of $32,120.58 by virtue of its filing a Notice of Federal Tax Lien prior to the debtors' filing their petition.

## DISCUSSION

### I.

■ The court shall first address the objections to the plan filed on behalf of the IRS. At the time of the hearing on confirmation, the debtors' counsel agreed that the plan should be modified to list the IRS as a secured creditor in the amount of $32,120.58. Since this amendment has not been made to date, it shall be ordered that the debtors modify their plan to include the IRS as a secured creditor with interest to be paid at the rate described below.[1]

The second portion of the IRS's objection to the debtors' plan concerns the value of the claim. The IRS contends it is owed $74,989.83. The debtors assert the IRS is owed $72,423.83. The difference is the amount of a payment in the sum of $2,475.00 allegedly made by the May Trucking Company on behalf of the debtors in June of 1986. The IRS asserts that no credit was made to the debtors' account because the Form 2290 Heavy Vehicle Use Tax Return gave only May's federal identification number and indicated the liability was that of May Trucking Company. The debtors assert that the information provid-

ed with their brief should permit the IRS to credit properly the payment. However, the IRS sets forth the procedures that must be followed before the payment can be credited. The court finds that these procedures are not overly burdensome and appear necessary to document properly the correction. Accordingly, the debtors will be ordered to follow the procedures outlined by the IRS before a plan proposing a total payment to the IRS of $72,423.83 will be confirmed.

■ The final aspect of the IRS's objection concerns the appropriate interest rate for its claim. The debtors' plan proposes an interest rate of 6 percent while the IRS contends that the appropriate interest rate should be 9 percent pursuant to Internal Revenue Code section 6621. Neither party presented evidence as to the appropriate rate at the hearing on confirmation. Rather their respective positions are described in their briefs.

Section 1129(a)(9)(C) provides:

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

. . . .

(C) with respect to a claim of a kind specified in section 507(a)(1) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

There is no dispute that this provision requires that a taxing authority must receive the present value of its unsecured claim if the plan provides for deferred cash payments. With respect to the secured portion of the government's claim, interest is required in accordance with 11 U.S.C. section 1129(a)(7)(A)(ii). Therefore, the court must ascertain what interest rate or what discount factor provides the IRS with the

---

1. The debtors are directed to the provisions of 11 U.S.C. section 1122 which provide for the classification of claims or interests. The court notes that the debtors' plan is comprised of only three classes—priority creditors, secured credi-

tors and unsecured creditors. Ordinarily, each holder of an allowed claim secured by a security interest in specific property must be placed in a separate class. 5 *Collier on Bankruptcy,* ¶ 1122.03[6] at 1122–13 (15th ed. 1986).

present value of its payments under the plan.

The debtors rely on *Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983) to discredit the IRS's application of the interest rate prescribed by Internal Revenue Code section 6621. The court in *Southern States* found the use of section 6621 an inadequate method for determining present value and instead opted for consideration of the "prevailing market rate" with consideration of the quality of the security and the risk of subsequent default. *Id.* at 651. This general standard has been adopted by the Eighth Circuit Court of Appeals in *In re Monnier*, 755 F.2d 1336 (8th Cir.1985). In *Monnier* the court stated:

> The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and risk of subsequent default.

*Monnier* 755 F.2d at 1339, quoting 5 *Collier on Bankruptcy* ¶ 1129, at 1129–65.

In *United States v. Neal Pharmacal Co.*, 789 F.2d 1283, 1284, n. 2 (8th Cir.1986), the Eighth Circuit observed that "[b]ecause both section 1129(a)(9)(C) and section 1129(a)(7) require that the debtor's plan of reorganization provide the government with the present value of its claim as of the effective date of the plan, the *method* of determining the proper interest rate is the same under each section". After reviewing the concept of market rate in a tax setting the court concluded:

> In summary, we hold that when a plan of reorganization requires a governmental unit to receive a section 507(a)(7) priority claim in deferred payments, the debtor must pay the governmental unit interest on the deferred payments at the "prevailing market rate" for a loan with a term equal to the payout period in the particular case, with due consideration to the existence and quality of any security and

the risk of subsequent default. In determining the "prevailing market rate," the interest taxpayers must pay on delinquent tax claims under 26 U.S.C. § 6621 is clearly relevant because that rate represents an attempt by Congress to charge taxpayers the prevailing market rate on delinquent tax liabilities. Courts must also consider, however, the extent to which the section 6621 rate lags behind market rates in general and whether the section 6621 rate reflects the risk, quality of any security, and term applicable in the particular case.

*Neal,* 789 F.2d at 1289.

This court published an opinion which examines the present value concept in the context of a Chapter 12 reorganization and sets forth a method for calculating the discount rate. *See Matter of Doud,* 74 B.R. 865 (Bankr.S.D.Iowa 1987). The *Doud* formula is based upon a treasury bond yield adjusted for the average amount of debt outstanding during the repayment period and for risk. *Id.* at 868–70. The objective *Doud* standard will apply in many reorganization settings. Section 1225(a)(5)(B), the provision in question in *Doud,* is identical to section 1325(a)(5)(B), the present value provision in Chapter 13 cases. The legislative history of the 1978 Act indicates that the present value analysis is the same for Chapter 11 and Chapter 13 cases. H.R.Rep. No. 595, 95th Cong., 1st Sess. 413 (1977), *reprinted in* 1978 U.S. CODE CONG. & AD.NEWS 5787, 6364. *See also, In re Benford,* 14 B.R. 157, 160 (Bankr.W.D.Ky.1981) ("Chapter 11 cramdown presents identical problems to those posed in Chapter 13"); *but see, In re Loveridge Machine v. Tool Co.,* 36 B.R. 159, 168 (Bankr.D.Utah 1983) (Chapter 13 cases distinguished from Chapter 11 cases on grounds that (1) Chapter 13 has no "fair and equitable rule", (2) there is no trustee in a typical Chapter 11 case, and (3) Chapter 13 cases usually deal with car dealer creditors or the IRS whereas other present value issues have not yet been raised).

The main distinction between *Doud* and this case lies in the analysis of the risk component appropriate under the circumstances. In *Doud,* the adjusted treasury

bond yield was further adjusted by adding 2 percentage points to account for the risks incumbent in the nature of a farming operation and the agricultural economy. *Matter of Doud*, 74 B.R. at 869–70. That risk factor was not further increased in *Doud* because of the existence of a Chapter 12 trustee as well as the court's conclusion that the plan was feasible. Those factors are not present in this case. There is no trustee, and the risks incumbent in the trucking business and as identified in the debtors' disclosure statement are as substantial as those involved in a farm reorganization. Accordingly, considering only the record before the court at this stage, a risk factor of 2.5 percent is appropriate.

Utilizing the *Doud* formula in calculating an appropriate interest rate on the IRS's claim would yield a higher discount factor than that the government seeks.[2] Since the government has agreed to less favorable treatment by seeking the section 6621 rate, the debtor must utilize that rate for both the secured and the priority claims of the IRS unless the statutory rate exceeds the Doud formula as of the effective date of the amended plan.

## II.

■ The objection filed on behalf of ITT states that the plan "substantially alters ITT's position so that it no longer has adequate protection and will not be receiving payments under the plan which are the indubitable equivalent of its claim." ITT apparently relies upon 11 U.S.C. section 1129(b)(2)(A)(iii). However, section 1129(b), which contains the so-called cram down provisions, applies only if the plan has satisfied all of the requirements of section 1129(a) with the exception of paragraph 8. Thus, before the court may consider the provisions of section 1129(b), it must determine whether the provisions of section 1129(a) are satisfied with respect to ITT and in general.

At this juncture, the claim of ITT must be analyzed according to the provisions of section 1129(a)(7), which provides:

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

Section 1129(a)(7) restates the "best interest of creditors" test as contained in section 366(2) of Chapter XI of the Bankruptcy Act. *See* 5 *Collier on Bankruptcy*, ¶ 1129.12 at 1129–31 (15th ed. 1986). In general this means that creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation. *See In re Neff*, 60 B.R. 448, 452 (Bankr.N.D.Tex.1985). The plan proponent must introduce sufficient current financial information about the debtor, the assets and liabilities and the prospects to establish that the standard has been satisfied. *Id.* Necessary information has not been presented to this court in any manner except for the original schedules of assets and liabilities, which reflect total assets of $689,435.00 and total liabilities of $630,704.85. That breakdown does not take into consideration the liquidation value of the debtors' assets nor account for exempt property. Indeed, the evidence presented by the parties at the hearing on confirmation served only to confuse the issue.

At the time of the hearing, both ITT and the debtors asserted that ITT's claim was considered fully secured. The proof of claim filed on behalf of ITT on August 6, 1986 indicates a claim in the amount of $235,645.14. The brief filed on behalf of ITT on July 6, 1987 indicates that ITT's claim is $216,000.00. According to ITT's witness, a truck appraiser, the value of ITT's collateral on the date of the hearing

---

**2.** The adjusted yield on a bond maturing in 45 months from the date of this decision is approx-

imately 8 points. Adding the risk factor to the riskless component exceeds 9 percent.

was between $167,300.00 and $199,800.00. The debtor, Bruce M. Moore, testified that various improvements to the collateral would increase their value.

At a glance, the provisions of section 1129(a)(7) are satisfied as to ITT's claim. ITT contends that upon liquidation of its collateral it would receive between $167,-300.00 and $199,800.00.[3] The plan fixes the outstanding debt at $224,000.00 to be paid over 53 months at 15 percent interest. Hence, the plan proposes payments with a present value in excess of the liquidation amount.

 In addition to any objection raised by creditors, the court has a mandatory independent duty to determine whether the plan meets all of the requirements necessary for confirmation. *In re Wallace*, 61 B.R. 54, 58 (Bankr.W.D.Ark.1986). As noted in division I of this opinion the plan does not satisfy section 1129(a)(1) because the secured claim of the IRS has not been separately classified pursuant to 11 U.S.C. section 1122. Likewise, the class of secured creditors consists of claims that are not substantially similar.[4] Moreover, the plan does not contain various mandatory provisions required by 11 U.S.C. section 1123. For example, there is no designation of impaired and unimpaired classes. As discussed in division I, the plan does not satisfy the provisions of 11 U.S.C. sections 1129(a)(9)(C) and 1129(a)(7) with regard to the present value of the priority and secured claims of the IRS.

Section 1129(a)(10) requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." Acceptance of the plan is determined pursuant to 11 U.S. C. section 1126. In this case the ballot file contains but one ballot cast on behalf of the IRS rejecting the plan. At the time of the hearing on confirmation, the attorney for Volvo/White Truck Credit Corporation reported a ballot accepting the plan had been filed by that creditor as a member of Class II. Debtors' counsel stated that two other creditors had indicated their acceptance of the plan. None of these allegations are formally documented and the defective separation of classes of claims and the failure to designate impaired and unimpaired classes prevents the court from independently determining whether there is compliance with section 1129(a)(10).

Section 1129(a)(11) contains the feasibility standards and requires the court to find that "[c]onfirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization. . . ." No specific information regarding feasibility of the plan was presented at the time of the confirmation hearing. Under the circumstances, the court relies upon the contents of the plan, the disclosure statement and the monthly reports in assessing the requirement of section 1129(a)(11). The court notes that the plan calls for monthly payments of approximately $16,000.00 for the next four years. While the debtors' disclosure statement indicates a cash flow potential in 1987 of $196,003.72, profits for the year to date are less than one-half that figure. Moreover, in the months since the hearing on confirmation, the operating reports submitted by the debtors evidence an inability to meet the proposed plan payments. Finally, the debtors recently filed an amendment to the plan of reorganization which adds another class comprised of the claim resulting from the rejection of the lease of the debtors' business premises at 5145 N.W. Beaver in Des Moines, Iowa. There is no information concerning the amount of this claim, proposed treatment or the substitution of an alternative business location. Given these considerations, the debtors' plan does not satisfy the requirement of section 1129(a)(11).

### CONCLUSION AND ORDER

WHEREFORE, based on the foregoing discussion, the court hereby finds that the

---

**3.** The court file reflects that ITT did not file an 1111(b)(2) election.

**4.** The collateral is varied and distinct as evidenced by the security interests in vehicles, in a phone system, and in a share account and the mortgage on a homestead.

debtors' plan of reorganization does not satisfy the provisions of 11 U.S.C. section 1129(a) and cannot be confirmed as proposed.

THEREFORE, the debtors are hereby ordered to file a modified plan that meets the requirements of 11 U.S.C. section 1129 within 30 days or the case shall be dismissed.