**In the Matter of Ralph B. LASSITER, Debtor.**

**Bankruptcy No. 88–2315–W J.**

United States Bankruptcy Court, S.D. Iowa.

July 17, 1989.

Casey J. Quinn, Attorney, Omaha, Neb., for debtor.

Kevin R. Query, Asst. U.S. Atty., Des Moines, Iowa, Roger W. Bracken, Trial Atty., Tax Div., Office of Sp. Litigation, U.S. Dept. of Justice, Washington, D.C., for IRS.

Joe W. Warford, Des Moines, Iowa, Chapter 13 Trustee.

Terry Gibson, Des Moines, Iowa, U.S. Trustee.

## ORDER ON OBJECTION TO CONFIRMATION OF PLAN AND ON OBJECTION TO CLAIM

LEE M. JACKWIG, Bankruptcy Judge.

On May 18, 1989 a hearing on the objection of the Internal Revenue Service (IRS) to the confirmation of debtor's amended Chapter 13 plan and on the debtor's objection to the IRS's proof of claim was held before this court in Council Bluffs, Iowa. Casey J. Quinn appeared on behalf of the debtor, Ralph Bunche Lassiter. Kevin R. Query, Assistant U.S. Attorney, and Roger W. Bracken, a trial attorney for the Tax Division of the Department of Justice, represented the IRS. Joe W. Warford, the Chapter 13 trustee, was also present. The matter was considered fully submitted at the close of the hearing.

### FACTS

1. On October 25, 1988 debtor filed a Chapter 13 petition and the items required by 11 U.S.C. section 521(1). He also filed a Chapter 13 plan as allowed by Bankruptcy Rule 3015.

2. Debtor's schedule B–4 listed the following exempt property:

| | | Exempt Amount: | Pursuant to: Iowa Code |
|---|---|---|---|
| a) | Wearing Apparel | $ 775.00 | § 627.6(1) |
| b) | Books and Pictures | 50.00 | § 627.6(3) |
| c) | Household Furniture | 785.00 | § 627.6(5) |
| d) | Motor Vehicles– 1986 Nissan | 1,200.00 | § 627.6(10)(b) |
| e) | 1976 Pontiac Bonneville | 35.00 | § 627.6(9)(b) |

| | | Exempt Amount: | Pursuant to: Iowa Code |
|---|---|---|---|
| f) | 1986 Nissan Pickup | 264.00 | § 627.6(9)(b) |
| | Total Exemptions | $3,109.00 | |

3. On November 30, 1988 the IRS timely filed a proof of claim evidencing a secured claim in the amount of $16,263.00 and an unsecured claim in the amount of $5,841.00.

4. On December 9, 1988 the trustee and the IRS filed objections to confirmation of the plan.

5. Pursuant to the January 11, 1989 hearing on the objections, the minute order filed January 13, 1989 directed the debtor to amend his plan and to file any objection to the IRS proof of claim by February 1, 1989. The order referenced 11 U.S.C. section 505 and Bankruptcy Rule 3007 and explained that the debtor's demand for relief would control whether an adversary proceeding must be filed or whether the issue could be disposed of by an objection and resistance alone.

6. On January 18, 1989 debtor filed an amended Chapter 13 plan, an objection to the IRS proof of claim and an amended Schedule B–4. The amended plan provided for the bifurcation of the IRS claim into a secured amount of $364.00 with an applicable interest rate of 10% A.P.R. and an unsecured amount of $21,740.00. In his objection to the IRS claim, debtor asserted that the schedules showed unencumbered property of $1,874.00 of which $1,510.00 was "exempt from the IRS lien" by operation of 26 U.S.C. section 6334. Accordingly, in the amended Schedule B–4, the debtor claims exemptions under 11 U.S.C. section 522(b)(2) as follows:

| | | Exempt Amount: | Pursuant to: |
|---|---|---|---|
| a) | Wearing Apparel | $ 775.00 | Iowa Code § 627.6(1) and 26 U.S. C.S. § 6334 |
| b) | Books and Pictures | 50.00 | Iowa Code § 627.6(3) and 26 U.S. C.S. § 6334 |
| c) | Household Goods, Supplies and Furnishings | 685.00 | Iowa Code § 627.6(5) and 26 U.S. C.S. § 6334 |

| | | Exempt Amount: | Pursuant to: |
|---|---|---|---|
| d) | Tools and Tool Boxes | 100.00 | Iowa Code § 627.6(10) |
| e) | 1986 Nissan Pickup | 264.00 | Iowa Code § 627.6(9)(b) |
| | Total Exemptions | $1,874.00 | |

7. The trustee withdrew his objection to confirmation on January 27, 1989. However, the IRS filed an objection to the confirmation of debtor's amended plan on February 2, 1989. The IRS also filed a response to the debtor's objection to its proof of claim on February 6, 1989.

8. On May 12, 1989 the parties filed the following stipulation of facts:

1. The debtor is obligated to the United States for income taxes, penalties and interest for each of the taxable years and for the amounts shown in the table below:

| Taxable Year | Tax Due | Penalty to Petition Date | Interest to Petition Date | Total to Petition Date |
|---|---|---|---|---|
| 1981 | $ –0– | $ 543.81 | $2,232.96 | $ 2,776.77 |
| 1982 | $1,492.56 | $1,500.93 | $1,728.90 | $ 4,722.39 |
| 1983 | $3,099.00 | $2,453.30 | $2,469.79 | $ 8,022.09 |
| 1984 | $ 467.40 | $ 66.31 | $ 208.04 | $ 741.75 |
| Total | $5,058.96 | $4,564.35 | $6,639.69 | $16,263.00 |

2. On August 20, 1985, the IRS properly and timely assessed the taxes owed by the debtor for tax years 1979 through 1982. On October 3, 1985 the IRS properly and timely filed a notice of tax lien with the Douglas County Register of Deeds in Omaha, Nebraska for each of these taxable years.

3. On September 3, 1987 the IRS properly and timely filed an additional notice of tax lien with the Douglas County Register of Deeds in Omaha, Nebraska for tax years 1981 and 1982.

4. On March 2, 1987, the IRS properly and timely assessed the tax owed by the debtor for tax year 1983. On May 26, 1987 the IRS properly and timely filed a notice of tax lien with the Douglas County Register of Deeds in Omaha, Nebraska for taxable year 1983.

5. On November 9, 1987, the IRS properly and timely assessed the tax owed by the debtor for tax year 1984. On January 15, 1988 the IRS properly and timely filed a notice of tax lien with

the Douglas County Register of Deeds in Omaha, Nebraska for the 1984 tax year.

6. On December 22, 1988, the United States timely filed its Proof of Claim with this court claiming secured status for unpaid taxes, penalties and interests for tax years 1981 through 1984, inclusive, by reason of properly filed Notices of Tax Liens.

7. The tax liabilities for tax years 1981 through 1984 are not entitled to priority status under 11 U.S.C. section 507(a)(7).

## DISCUSSION

### I. The Allowed Secured Claim

The debtor argues that 26 U.S.C. section 6334 "exempts from the IRS lien" certain property he has claimed exempt on Schedule B–4, as amended.[1] Accordingly, the debtor maintains that the Bankruptcy Code (the Code) does not require him to include the exempted amount in the IRS's allowed secured claim.

The IRS contends that 26 U.S.C. section 6331 creates a tax lien that encumbers all of the debtor's property and that section 6334 exempts property from seizure by levy only, not from the lien per se. Accordingly, the IRS maintains that the Code requires the debtor to include the exempted amount in its allowed secured claim.

The present controversy stems from and thrives on what appears to be widespread confusion between the concept of claiming property exempt from the estate (not from the secured creditor's lien) and the concept of an allowed secured claim being determined according to the estate's interest in property. The estate has no interest in exempt property whether or not the debtor is permitted to avoid any lien against the exempt property. Accordingly, as will be explained further below,[2] the debtor is not required to include the exempt amount in the IRS's allowed secured claim under the plan. However, consistent with the statutory framework which provides special protection for certain tax liens, there is nothing the debtor can do under the Code to extinguish the lien on the property that has been exempted from the estate.

The tax lien in issue arises by operation of 26 U.S.C. section 6321 which provides:

If any person liable to pay any tax neglects or refuses to pay same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

In accordance with the quoted statute, the IRS possessed a lien on all debtor's property once he failed to pay the taxes he owed. The IRS perfected its lien by properly filing a notice of its lien.

11 U.S.C. section 522(b) allows debtors to claim certain property exempt from the property of the estate. However, that does not mean that the exempt property is free of otherwise valid liens. 11 U.S.C. section 522(c)(2) provides that:

(c) Unless the case is dismissed, property exempt under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

    .    .    .    .    .

(2) a debt secured by a lien that is—

---

**1.** To the extent the debtor's objection to the IRS claim may actually seek to extinguish the IRS lien as to the property claimed exempt under either federal or state statute and since 11 U.S.C. section 522(f) and Bankruptcy Rule 4003(d) do not appear to be applicable here by operation of 11 U.S.C. section 522(c)(2)(B), the debtor should have commenced an adversary proceeding as indicated in this court's January 13, 1989 order. However, the IRS has not contested the posture of the controversy. Accordingly, this decision addresses the commingled issues. See *In re Ridgley,* 81 B.R. 65, 67 (Bankr.D.Or.1987).

**2.** This decision does not attempt to analyze and to reconcile the divergent interpretations found in the caselaw that has developed in this area. Rather, this opinion will focus mainly on what this court views as the clear and straightforward provisions of the Code.

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed.

As is evident from the absence of any reference to lien avoidance in paragraph (B) of section 522(c)(2), certain tax liens enjoy a "security" that other debts secured by liens on exempt property do not. That is, they do not run the risk of being extinguished if the debtor otherwise can and does take advantage of the various lien avoidance provisions.

However, concluding that such tax liens cannot be avoided does not equate with concluding that the debtor may not still claim proper exemptions under section 522(b). Indeed, section 522(c) simply does not obviate the debtor's right to claim exemptions. It only clarifies that certain creditors are free to pursue the property which has been exempted from the property of the estate [3] and, concomitantly, from the interplay of numerous Code sections dealing with the property of the estate.

11 U.S.C. section 522(b) which permits debtors to exempt certain property from the bankruptcy estate provides in pertinent part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternate, paragraph (2) of this subsection.

Paragraph (1) allows individual states to reject the federal exemption scheme provided for in section 522(d). Iowa has chosen to "opt-out" of the federal exemptions. Iowa Code § 627.10. Pursuant to Iowa Code section 627.6, the personal property exemptions the debtor has claimed are all valid.[4]

The exemption allowance is important in assessing the allowed secured claim of the IRS for the purpose of 11 U.S.C. section 1325(a)(5)(B)(ii) which governs payment of allowed secured claims under the Chapter 13 plan. 11 U.S.C. section 506(a) provides in relevant part that:

[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest *in the estate's interest* in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall

---

**3.** If the creditor attempts to enforce its lien and such action falls within the confines of 11 U.S.C. section 362(c)(2), the creditor must seek relief from the automatic stay pursuant to section 362(d).

**4.** 11 U.S.C. section 522(b)(2)(A) permits the debtor in an "opt out" state to exempt from the estate "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law ...". Subsection (d) does not reference 26 U.S.C. section 6334. However, unless the debtor did think he could utilize the IRS Code section to extinguish the tax lien, it is not clear why he made a duplicate claim of exemptions. That is, the exemption amounts the debtor has claimed fall well within the state statutory limits. Although the federal exemption in issue might be of some benefit in another forum if the IRS pursues a levy, it is of doubtful materiality and relevance in this bankruptcy case.

Parenthetically, this court acknowledges the existence of decisions that hold that state exemptions do not apply in bankruptcy to federal tax liens. *E.g., Matter of Riley,* 88 B.R. 906

(Bankr.W.D.Wis.1987) and *In re Ray,* 48 B.R. 534 (Bankr.S.D. Ohio 1985). However, this court does not find those cases persuasive. The exemption section in the Code is integral to the bankruptcy scheme created by Congress. As stated earlier in the text, the property in issue is exempted from the bankruptcy estate, not from the secured creditor's lien. Obviously, although the state exemptions may be claimed for bankruptcy purposes in an "opt out" state, those same exemptions could not be claimed in a levy context because Congress has set forth the specific exemptions that may be claimed as part of the federal tax scheme. This does not mean that the Bankruptcy Code and the Internal Revenue Code are irreconcilable. Rather, property which is and remains subject to an 11 U.S.C. section 522(c)(2)(B) tax lien may be exempted from the bankruptcy estate to the extent allowed by 11 U.S.C. section 522(b) and, subsequently, may be exempted from levy in a nonbankruptcy forum to the extent allowed by 26 U.S.C. section 6334.

be *determined in light of the purpose of the valuation* and of the proposed disposition or use of such property, *and in conjunction with any hearing* on such disposition or use or *on a plan* affecting such creditor's interest. (Emphasis added.)

■ As of the time of the hearing on confirmation of the plan, which is when the court determines the creditor's allowed secured claim which must be paid under the plan, the estate no longer has an interest in the property which has been exempted from it pursuant to section 522(b).[5] Hence, the allowed secured claim of the IRS does not include the exempted amount because the IRS's allowed secured claim cannot exceed the estate's interest in property. Accordingly, the IRS's objection to the plan on the ground that the debtor has not provided for payment of its allowed secured claim is overruled. If anything, the debtor has provided more than the Code requires by including the amount for the exempt tools and pickup.

■ Once again, this court points out that the preceding conclusion is not the equivalent of concluding that the debtor avoids the lien on the property that has been exempted from the estate. Thus, if the debtor's objection to the claim of the IRS only seeks a determination of the value of the allowed secured claim—whether it included the property exempt from the estate, it is sustained because the estate has no interest in the exempt property. To the extent the debtor's objection to the claim of the IRS actually seeks to extinguish the tax lien on the property that has been exempted from the estate, it is overruled because Congress has provided that certain tax liens, like that in issue, survive outside the bankruptcy arena and are not

even subject to the possibility of lien avoidance attack as are other liens secured by property that has been exempted from the estate. The latter (if avoided by operation of the provisions listed in section 522(c)(2)(A)) do not survive the bankruptcy process and, accordingly, cannot be pursued by the creditor outside the bankruptcy arena.

## II. The Present Value of the Allowed Secured Claim

■ With respect to the appropriate discount factor to be applied to the allowed secured claim of the IRS pursuant to 11 U.S.C. section 1325(a)(5)(B)(ii), the parties' arguments at the time of the hearing focused on the appropriate risk component that should be factored into the *Doud* formula. The debtor asks this court to apply a 1% risk factor for reasons similar to those advanced in *In re Fisher*, 29 B.R. 542 (Bankr.D.Kan.1983). The IRS contends the court should construe the risk inherent in this case to be of a similar degree as that encountered in farm reorganizations and, accordingly, should apply the 2% risk factor set forth in *Matter of Doud*, 74 B.R. 865 (Bankr.S.D. Iowa 1987), *aff'd* No. 87-577-B (S.D. Iowa December 4, 1987) [1987 WL 46813], *aff'd sub nom. U.S. v. Doud*, 869 F.2d 1144 (8th Cir.1989).

In *Matter of Moore*, 81 B.R. 513, 515 (Bankr.S.D. Iowa 1988), this court stated that the objective portion of the *Doud* formula, which formula is based upon a treasury bond yield adjusted for the average amount of debt outstanding during the repayment period and for risk, would apply in many reorganization settings. In reaching the conclusion that the *Doud* riskless component would apply in the Chapter 11 case under consideration, the *Moore* decision

---

**5.** No objections to the exemptions, even as amended, were filed. By operation of section 522(b) and Bankruptcy Rule 4003(b), the property in issue was exempted from the bankruptcy estate within 30 days after the amended Schedule B-4 was filed, at the latest. *See In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984) (unlike the Bankruptcy Act, the Code contemplates the inclusion of all debtor's property in the estate; however, the debtor subsequently may exempt certain property from the estate). *See also Mat-*

*ter of Hunerdosse*, 85 B.R. 999, 1008 (Bankr.S.D. Iowa 1988), *aff'd sub nom. United States of America v. Hunerdosse*, No. 88-364-B; slip op., (S.D. Iowa November 28, 1988) (value of exempt property deducted from allowed secured claim despite lien retention on collateral per se until discharge entered upon completion of Chapter 12 plan payments); *Matter of Bluridg Farms, Inc.*, 93 B.R. 648, 655 (Bankr.S.D. Iowa 1988) (similar holding as *Hunerdosse*).

noted in passing that 11 U.S.C. section 1225(a)(5)(B), which was under consideration in the *Doud* case, is identical to section 1325(a)(5)(B). *Id.*

As in the *Moore* case, an analysis of the risk component indicates that this subjective portion of the *Doud* formula must be adjusted to accommodate the Chapter 13 case. Unlike the *Moore* case, which adjusted the *Doud* risk component upward due to the lack of a trustee overseeing the reorganization and due to the risks inherent in the trucking business in general and in debtor's operation in particular, the risk component should be adjusted downward to 1% in this Chapter 13 nonfarm case. See *In re Fisher*, 29 B.R. 542, 551 (Bankr.D.Kan. 1983).

The IRS argues that the Chapter 13 wage-earner and the Chapter 12 farmer are not in dissimilar positions. This argument is not persuasive. Indeed, the risks inherent in the nature of a farming operation and the agricultural economy belie the contention of the IRS. The several risk similarities and differences between a Chapter 13 case and a Chapter 12 case were reviewed in *Doud* and need not be repeated here. *Doud*, 74 B.R. at 869.

The IRS also argues that the risks to and concerns of a creditor in a situation where the Chapter 13 debtor has only recently obtained steady employment are like those of a Chapter 12 creditor whose plan payments depend upon the seasonal nature of farming. This contention cannot be given much deference because, in many aspects of employment, an employee like the debtor in this case can lessen or counter the uncertainty of particular employment; an individual farmer, on the other hand, can do little, if anything, to control the unpredictability of the agricultural economy. *Id.*

The IRS further contends that there is no evidence that the debtor will maintain his employment throughout the life of the plan.[6] However, the record does not support a conclusion that the debtor will not maintain employment while the confirmed plan pends. Indeed, no evidence was introduced that the debtor has had employment problems in the past or that the debtor could not obtain gainful employment elsewhere if his present employment should be terminated.

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing discussion, the court finds that:

1. The allowed secured claim of the IRS does not include the value of exempt property;

2. The IRS tax lien remains a lien against the property that has been exempted from the bankruptcy estate; and

3. The present value of the allowed secured claim shall be based on the objective component of the *Doud* formula (to be determined as of or near the date of the confirmation hearing) with a 1% adjustment for risk.

THEREFORE, the objection of the IRS to confirmation of the amended Chapter 13 plan is overruled. To the extent the objection to the IRS claim concerns the amount of the allowed secured claim, it is sustained; to the extent it seeks to avoid the tax lien, it is overruled.

The debtor shall further amend his plan to comply with the court's findings and to exclude, as discussed at the hearing, the present limitation in the amended plan with respect to the amount of disposable income that will be committed to plan payments. The second amended plan shall be filed within 20 days of this order.

---

6. The issue the IRS raises herein touches upon the eligibility issue ("regular income") found in 11 U.S.C. section 109(e) and the feasibility requirement of 11 U.S.C. section 1325(a)(6).