**In re Leroy Calvin HALL and Versailene Hall, Debtors.**

**Bankruptcy No. IP89–6729–RWV–13.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Sept. 7, 1990.

See also, Bkrtcy., 117 B.R. 425.

Robert A. Brothers, William L. Price, Indianapolis, Ind., for debtors.

Douglas J. Hannoy, Feiwell & Associates, Russell D. Pinkerton, District Counsel Office, I.R.S., Gerald A. Coraz, Asst. U.S. Atty., Indianapolis, Ind., for I.R.S.

ORDER OVERRULING OBJECTION TO CLAIM OF IRS SUSTAINING IRS'S OBJECTION TO PLAN, AND SETTING DEADLINE FOR AMENDMENT OF PLAN

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the Objection to Claim of Internal Revenue Service ("the Objection to Claim") filed by the Debtors on January 3, 1990, and on the Objection to Confirmation of Debtors' Plan ("the "Objection to Plan") filed by the Internal Revenue Service ("the IRS") on November 13, 1989. The matters were heard on August 1, 1990. The Court now overrules the objection to Claim and sustains the Objection to Plan on the following findings of fact and conclusions of law, and sets a deadline for filing an amended Chapter 13 plan.

*Findings of Fact*

1. The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on September 15, 1989. On October 3, 1989, the filed a Chapter 13 Plan. The plan lists as Class 2 the claim of the IRS to the extent entitled to priority under 11 U.S.C. section 507(a)(7)(A), and as Class 9 the claim of any tax authority not previously mentioned, with other unsecured claims. The Class 2 claim was to be paid in full, but any claim of the Class 2 creditor not entitled to priority was to be paid as a Class 9 general unsecured claim. The plan values the Class 2 claim at $13,000.00 and estimates the total Class 9 claims to be $1600.00. The plan estimates a 100% dividend for the Class 9 claims, and states that unsecured creditors would receive nothing if this case were one under Chapter 7. In their schedules, the Debtors value their home at $30,000.00 and show it encumbered by $28,500.00 in consensual liens. They claim as exempt $1500.00 in equity in their home and $2100.00 in other property.

2. In the Objection to Plan, the IRS contends that the plan fails to recognize the secured status of the IRS claim, that to the extent the IRS is oversecured, it is entitled to postpetition interest on its claim, and that the plan fails to provide for payment of any taxes due for the year ending December 31, 1987, for which the Debtors had not filed a return.

3. The IRS's Proof of Claim, filed on October 25, 1989, and amended on January 5, 1990, claim a total of $17,903.86 as of the petition date. The IRS asserts a secured claim of $9,146.82 for income tax, penalty and interest for the 1984 tax year, unsecured priority claims totally $7188.82 for income tax and interest for the 1985, 1987 and 1988 tax years, and a general unsecured claim of $1568.22 for penalties on the unsecured priority claims.

4. In their Objection to Claim, the Debtors contend that the claim of the IRS is not secured because the IRS cannot have an allowed secured claim in property that the Debtors have claimed as exempt, that as an unsecured creditor, the IRS is not entitled to postpetition interest, that the penalty claim of the IRS should be subordinated to general unsecured creditors, that the claims for "Additional Assess" should not be allowed priority status, and that the claim for the year ending December 31, 1987, should be disallowed because it is based on estimated liability. The Debtors ask the Court to disallow the IRS secured status, to subordinate the IRS penalty claim, and to disallow all priority claims and the estimated liability claim.

5. A report submitted by the IRS on December 8, 1989, states that the Debtors have filed tax returns for the year 1987.

6. At the hearing on August 1, 1990, counsel for the Debtors and the IRS stated that if the IRS claim is found to be secured, it would be in an amount between $3000.00 and $3500.00, which the parties would work out if necessary. The IRS conceded in its memorandum filed February 20, 1990, that its claim for 1984 to the extent it is undersecured must be treated as a general unsecured claim. At the hearing, the parties addressed only the issues of whether the IRS claim is secured and whether the IRS penalty claim should be subordinated. The Court will therefore address only these issues, since the parties have apparently resolved or waived the other issues raised.

*Conclusions of Law*

1. The Court has jurisdiction over this matter as a core proceeding. *See* 28 U.S.C. section 157(b)(2)(B) and (L).

2. A federal tax lien attaches to all of a taxpayer's real and personal property upon assessment and demand, 26 U.S.C. sections 6321 and 6322, and remains in effect until the taxes are paid or until the statute of limitations has run, 26 U.S.C. section 6322. Although certain property is exempt from levy, *see* 26 U.S.C. section 6334, the tax lien remains valid and attached to such property. The Debtors do not contest that before they filed their petition, the IRS had a valid tax lien on their property for 1984 taxes.

3. All allowed claim of a creditor secured by property in which the estate has an interest is a secured claim "to the extent

of the value of such creditor's interest *in the estate's interest in such property,"* and is an unsecured claim to the extent the claim exceeds this value. 11 U.S.C. section 506(a) (emphasis added). With two inapplicable exceptions, to the extent a lien secures a claim that is not an allowed secured claim, it is void. 11 U.S.C. section 506(d).

4. A debtor in Indiana is allowed to exempt and retain certain property from the estate, including real or personal property constituting the debtor's residence, up to a value of not more than $7500.00 per person, other real estate or tangible personal property of $4000.00, and intangible personal property of $100.00. *See* 11 U.S.C. section 522(b)(1); Ind.Code 34–2–28–0.5; Ind.Code 34–2–28–1(a). A debtor may avoid the fixing of a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled, if the lien is a judicial lien, 11 U.S.C. section 522(f)(1), or if the lien is a nonpossessory nonpurchase-money security interest in household goods and furnishings, wearing apparel, and certain other types of exempt property, 11 U.S.C. section 522(f)(2).

5. To be confirmed over the objection of a creditor holding an allowed secured claim, a Chapter 13 plan must provide that either the debtor surrender the collateral or that such creditor retain its lien securing the claim and that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim...." 11 U.S.C. section 1325(a)(5). This present value requirement is most often satisfied by providing interest on allowed secured claims ("present value interest"), so that payments made over the life of the plan equal the present value of the claim. To be confirmed, a Chapter 13 plan need only provide holders of allowed unsecured claims the value, as of the effective date of the plan, of what they would have received if the case had been one under Chapter 7. 11 U.S.C. section 1325(a)(4). Upon completion of the plan, with two inapplicable exceptions, debtors are discharged from all

claims that were provided for in the plan or that were disallowed. *See* section 1328(a).

6. The Debtors contend that they have successfully claimed an exemption in property valued at approximately $3500.00, that the IRS's claim cannot be an allowed secured claim to the extent it relies on attachment to the exempt property, since *the estate* does not have an interest in this exempt property, and that their plan, therefore, does not have to provide the IRS with present value interest, citing in support *In re Lassiter,* 104 B.R. 119 (Bankr.S.D.Iowa, 1989).

7. In a case factually similar to this one, the *Lassiter* court acknowledged that the IRS's lien had properly attached to all the debtors' property, including exempt property, under 26 U.S.C. section 6321. *Id.* at 121. It concluded that the debtors could not avoid the IRS's lien, citing 11 U.S.C. section 522(c)(2), which, in simplified terms, excepts tax liens from both the trustee's and the debtor's avoidance powers, including avoidance under sections 506(d) and 522(f). *Id.* at 121–22. (Under the language of section 506(d) a lien is not "avoided" but rather declared "void". For simplicity, however, this will be referred to as lien avoidance also.) Nevertheless, despite the conclusions that the IRS had a valid, nonavoidable lien in the exempt property, the court concluded that the IRS's claim was not an allowed secured claim to the extent of the value of the exempt property since the estate had no interest in exempt property. *Id.* at 122–23.

8. This Court cannot follow the *Lassiter* case for several reasons. First, the case fails to give proper effect to 11 U.S.C. section 541(a), which provides that the bankruptcy estate consists of all legal and equitable interests of a debtor in any property as of the commencement of a case. True, the debtor may, in the course of the bankruptcy, exempt certain property from the estate under section 522(b), but as of the commencement of the case, the estate has an interest in *all* of the debtor's property, including property subject to the debtor's exemption rights. The *Lassiter* court held that at the time of the confirmation

hearing, exemption had already been effected and the estate no longer had an interest in the property. *Id.* at 123. This Court, however, concludes that the commencement of the case (or the time when property is first brought into the estate) is the appropriate time for determining whether the estate has an interest in property that is later exempted. *See In re Driscoll,* 57 B.R. 322, 327 (Bankr.W.D.Wis. 1986). This date comports best with the underlying framework of bankruptcy under the Code, i.e. that all a debtor's property become part of the estate, subject to later removal from the estate by such actions as the debtor's exemption and the trustee's abandonment of estate property.

9. Any other date could create a plethora of practical problems. For instance, the trustee or creditor may file an objection to a claimed exemption within 30 days after the conclusion of the first meeting of creditor. See Bankruptcy Rule 4003(b). The matter may then be briefed and heard, the bankruptcy court will decide the matter, and there may be appeals to potentially three higher courts before the matter is finally resolved. Meanwhile, the bankruptcy court would be unable to determine the status of claims secured by the purportedly exempt property, delaying indefinitely final resolution of such matters as the allowability of post-petition interest, *see* 11 U.S.C. section 506(b), and Chapter 13 plan confirmation, *see* 11 U.S.C. section 1325(a)(5). Moreover, the *Lassiter* position would introduce an area of contention that does not arise now in most Chapter 13 cases. In Chapter 13, in contrast to Chapter 7, debtors may keep all their property, not just their exempt property, in exchange for paying holders of secured claims the value of their collateral and holders of unsecured claims at least as much as they would have received in Chapter 7. *See* sections 1306(b), 1325(a)(4) and (5), and 1327(b). A Chapter 13 debtor's claim of exemption usually becomes an issue only in determining whether the debtor may avoid certain liens under section 522(f) and in determining whether unsecured claimants are getting their due. Since most cases would be no asset Chapter 7's, the latter issue rarely

arises. Under *Lassiter,* however, exemptions may become an issue in any case in which a creditor asserts a lien on property the debtor claims as exempt, which is probably the majority of Chapter 13 cases.

10. The *Lassiter* position also creates a hybrid type of claim not contemplated by the Code. Under the Code, an allowed claim will be either secured or unsecured, with undersecured claims bifurcated into a secured claim in the amount of the value of the collateral and an unsecured claim for the amount above the value of the collateral. *See* section 506(a). The survival of liens securing certain *disallowed* claims is contemplated. *See* section 506(d). Under *Lassiter,* however, an allowed tax claim secured by a nonavoidable lien on exempt property is an *allowed unsecured* claim that is *secured* by a valid lien.

11. The *Lassiter* decision could lead to untenable results if applied to other situations, since there is nothing to limit it to tax liens, or to exempt property, or to Chapter 13 cases. For instance, a trustee in a Chapter 7 case might abandon property which is fully encumbered by a mortgage. *See* section 554. Since the estate no longer has an interest in the property, the creditor's entire claim (not just the undersecured part) would be treated as an allowed unsecured claim. The creditor then would be able to share pro rata on its entire claim in the distribution of estate assets on the same basis as creditors who are truly unsecured, in contravention of the Code's structure, which reserves estate assets primarily for priority and unsecured claims while holders of secured claims look to their collateral for satisfaction. *See* section 726(a).

12. *Lassiter* would create absurd results in jurisdictions following the line of authority holding that section 506(d) lien avoidance is not limited to liens securing disallowed claims. *See e.g. In re Folendore,* 862 F.2d 1537 (11th Cir.1989). For example, a debtor could claim that a creditor holding a purchase money security interest in her furniture, which she claims as exempt, cannot have an allowed secured claim since the estate has no interest in the

furniture. When the claim is found to be "unsecured" under section 506(a), she claims that the lien is void under section 506(d), since it does not secure an allowed secured claim and does not enjoy the special protection tax liens have under section 522(c)(2)(B). Thus, the debtor would manage to avoid a purchase money security interest in exempt property, a result impossible under the debtor's lien avoidance powers of section 522(f). In fact, such a result would render section 522(f) a virtual nullity, since no lien of any character, except tax liens, could "stick" to exempt property. Abandoned property would present an even broader problem. In a typical no asset case, the trustee abandons all estate property since it is either exempt, encumbered by valid liens or of inconsequential value. *See* 11 U.S.C. section 554. At such time, the estate no longer has an interest in any of the abandoned property, and a debtor could contend, under *Lassiter*, that no claim can be an allowed secured claim. The debtor could then contend that all liens, except tax liens, on the abandoned property are void under section 506(d), even if the property had been abandoned *because* it was subject to a valid lien. While the *Lassiter* court has not followed *Folendore, see In re Doty*, 104 B.R. 133 (Bankr. S.D.Iowa 1989), the Court notes that *Folendore* appears to be the majority position, the law of this circuit, *see In re Lindsey*, 823 F.2d 189 (7th Cir.1987), and the one advanced by a leading bankruptcy authority, *see* 3 Collier on Bankruptcy para. 506.-07, and that following both *Folendore* and *Lassiter* would produce these problems.

13. The Court's conclusion accords with the position of a leading bankruptcy authority and the cases it cites in support. The requirement that the allowed secured claim be limited to the estate's interest in the collateral may come into play when the debtor has made a nonavoidable transfer of the collateral prior to filing, in which case the estate would have no interest in the collateral since the debtor had none when the petition was filed, or when the debtor is not the sole owner of the collateral at the time of filing, in which case the rights the co-owners must be considered. *See* 3 Collier on Bankruptcy, para. 506.04[1]. If the property is exempt, but subject to liens that are not avoidable under section 522(f), "the exemption cannot protect such property from unavoided liens ..." and the exemption "will not limit the amount of a secured claim." *See id.* The Court's conclusion also accords with other courts' handling of Chapter 13 cases involving IRS claims on exempt property. *See e.g. In re Ridgley*, 81 B.R. 65, 69 (Bankr.D.Or.1987); *In re Driscoll*, 57 B.R. 322, 327 (Bankr.W. D.Wis.1986).

14. On the date the Debtors filed their petition, an estate was formed which included the property they now claim as exempt. Since the estate had an interest in the exempt property at that time, section 506(a) provides no basis for determining that the IRS's claim is not secured up to the value of the collateral. The Court therefore concludes that the claim of the IRS for 1984 taxes is an allowed secured claim to the extent of the value of the collateral securing it.

15. The Debtors' proposed plan treats the IRS's claim for 1984 taxes as an allowed unsecured claim when it is entitled to treatment as an allowed secured claim, up to the value of the collateral securing it. The IRS's Objection to Plan must be sustained and the plan cannot be confirmed since the plan fails to provide the IRS with the present value of its allowed secured claim.

16. The Debtors seek to equitably subordinate the IRS's general unsecured tax penalty claim to the claims of other unsecured creditors under section 510(c). However, it is unclear what the Debtors seek to gain by such subordination. The IRS's general unsecured claim, whether a penalty claim or not, does not have to be paid in full, in contrast to priority and secured claims. *See* sections 1322(a)(2) and 1325(a)(5). All the Debtors need do for the general unsecured claimants is pay the present value of what they would receive if this were a Chapter 7 case and apply all their disposable income to the plan for its duration. *See* section 1325(a)(4) and

(b)(1)(A). It is conceivable that a debtor might have some stake in the outcome of a subordination challenge. A tax penalty claim that is not in compensation for actual pecuniary loss would be automatically subordinated in Chapter 7, so that there would be no payment on it until other general unsecured claims were paid in full. *See* section 726(a)(4). If a debtor's disposable income over the life of the plan were not enough to pay what these latter claimants would receive in Chapter 7 if a pro rata payment on the tax penalty claim were also required, subordination could determine whether the debtor could propose a confirmable plan, and the debtor would have a stake in the outcome of the matter. Perhaps there are other scenarios in which a Chapter 13 debtor would be affected by the outcome of this subordination issue.

17. In this case, however, the Debtors' plan proposes 100 percent payment on the class 9 claims, i.e. all general unsecured claims, including the tax penalty claim, and the plan asserts that the general unsecured creditors would receive nothing if this were a Chapter 7 case. Subordination of the tax penalty claim will, therefore, have no effect on the confirmability of the plan or on the payments the Debtors will have to make. The Debtors therefore appear to have no stake in how the plan payments are distributed among the general unsecured claimants and no duty to protect the interests of unsecured claimants. *Cf. In re Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990) (Chapter 11 debtor-in-possession, with duties of trustee under section 1107, successfully sought subordination of tax penalty claim).

18. The Debtors must amend their plan because of the Court's ruling on the *Lassiter* issue and an earlier ruling on the Debtors' dispute with a mortgage company. It is possible that after the plan is amended, the Debtors will be able to demonstrate standing to assert the equitable subordination issue. The Court, therefore, will overrule the Objection to Claim insofar as it seeks equitable subordination of the tax penalty claim, but will give the Debtors leave to reassert this objection if they can

demonstrate standing after they amend their plan.

The Court therefore OVERRULES the Debtors' Objection to Claim, SUSTAINS the IRS's Objection to Plan, and sets September 24, 1990, as a deadline for the Debtors to file an amended plan.

SO ORDERED.